TYSON et ux. v. FARM AND HOME SAVINGS AND LOAN ASSOCIATION, Appellant.

### Division One, June 12, 1900.

1. **Taking Deposition of Opposite Party: ABUSE.** A party has a right under the statutes to search the conscience of his adversary by taking his deposition in advance of the trial, and in so doing he should be given as large liberty as the right and justness of the circumstances demand. But the only legitimate purpose for which the deposition may be taken is that it may be used as evidence at the trial of the case, and whenever the court is satisfied that the only purpose of taking it was something ulterior to this purpose, it should not impose on the party refusing to respond to the notary's subpoena the extreme penalty of striking his pleading from the files.

2. **Fraudulent Mortgage:** LOAN AND SAVINGS COMPANY: VOLUNTARY PAYMENT: CASE STATED. Plaintiff gave a mortgage on his farm to a nursery company, conditioned that it would be discharged with any two apple crops to be named by the nursery company within fifteen years after the mortgage was made. The company was not urging a satisfaction of its mortgage, and it was not troubling plaintiff, but he applied to one Wood, to whom the nursery company was indebted, and who was the agent of the defendant loan company, for a loan of $250, to be secured by a mortgage on his farm, which was executed, together with an obligation to pay the company $34.50 per month for 144 months, whose payment was also secured by the mortgage. The application for the loan contained an order directing the company to pay $250 to Wood, and made such payment a complete voucher to it, and the company took out $41.50 for expenses and as advance payment of the first monthly dues, and directed Wood to pay off the nursery incumbrance and give plaintiff the balance. The nursery company agreed to take $150 for their mortgage, and when Wood credited his account against it for that amount it issued its release, and this was put of record, and after $3 more was deducted for this expense, the balance of $55 was tendered to plaintiff, which he refused to receive. Afterwards an effort at settlement was made, and the president of the loan company agreed to cancel the mortgage on the return to the company of $41.50 by the plaintiff and the balance of the $250 by Wood, who also agreed to the settlement, and plaintiff paid his share but Wood did not respond, and the settlement failed, and then plaintiff brought this suit to set aside the mortgage obligation. *Held*, that the mortgage should be set aside as being fraudulent. *Held*, also, that Wood's paying off the nursery mortgage was a mere voluntary intermeddling with plaintiff's affairs, for the consequence of which plaintiff is not responsible.

Appeal from Douglass Circuit Court.—*Hon. W. N. Evans*, Judge.

AFFIRMED.

*Wm. O. Mead* and *T. T. Loy* for appellant.

(1) The motion to strike out plaintiff's petition and for judgment on the answer and cross-bill should have been sustained. R. S. 1889, secs. 8920, 8924; Larimore v. Bobb, 114 Mo. 446; Snyder v. Raub, 40 Mo. 166; Haskell. v.

Sullivan, 31 Mo. 435; Carr v. Dowes, 46 Mo. App. 351; Royer v. Girman, 48 Mo. App. 510. (2) There is no claim or pretense that the amount paid by defendant to discharge the fruit tree lien to Stark Bros., was unreasonable or excessive, and his acceptance and putting the deed of release to record was a ratification of such payment, if it had not been before authorized. Here the act complained of was done on the 20th day of August, 1895, with the plaintiff's full knowledge for more than a year, when he brings this suit to cancel that part of the transaction creating liability, while he accepts and retains the benefits accruing to him by the discharge of the fruit tree liens to Stark Bros., which he can not do. Bank v. Badger Lumber Co., 54 Mo. App. 327; Watson v. Begelow, 47 Mo. 413.

*A. H. Livingston* for respondents.

(1) For the present, leaving out of sight the infamous scheming, fraud, usury and extortion on part of appellant and its agent, Woods, as shown by the record, the fact that the matter was afterwards settled between the parties, is conclusive and will fully support the judgment of the trial court. Appellant agreed to receive back the $208.50 sent Woods, and Woods agreed to pay it. And respondent agreed to pay all expenses, which he tendered, and thus the matter was finally settled. This was the last of the transaction between the parties. Woods embezzled the money, and is liable to appellant therefor; yet appellant refuses to cancel the deed of trust and seeks to hold respondents liable for the amount. The settlement made can only be set aside on the grounds of fraud, accident or mistake. There is no claim in this case that the settlement was other than fair. In fact, respondent was the only loser. Mateer v. Railroad, 105 Mo. 320; State ex rel. v. Ewing, 116 Mo. 129. (2) The

so-called fruit tree lien is not a lien in any sense of the term. It is simply a contract, whereby respondent agreed to pay the fruit company two crops of fruit within fifteen years. (3) It was not error for the court to refuse to dismiss respondent's petition because he did not give his deposition before the notary. If he was in contempt, the notary could have attached and fined him. This matter is ever in the sound discretion of the court, and unless clearly abused will not be disturbed. Larimore v. Bob, 114 Mo. 446; Haskell v. Sullivan, 31 Mo. 435; Whitsett v. Blumenthal, 63 Mo. 479. It was evident that the only purpose in taking respondent's deposition was to disclose the evidence on which he relied. This will not be permitted. Matthews v. Railroad, 142 Mo. 645.

VALLIANT, J.—Suit in equity to set aside a deed of trust on the ground of fraud; the defense being a denial of the fraud and a cross-bill to foreclose the deed of trust. There was a finding for the plaintiff on the issues, and a decree cancelling the deed of trust, from which defendant appeals.

The following controlling facts are gathered from the evidence:

The defendant corporation had an agent, one Woods, at Norwood, Missouri, through whom its business at that point passed, and through whom the transactions we are now concerned with passed. Tyson owned a small farm, worth about $1,200, in Douglas county, on which he had given what is called in the record a fruit tree mortgage, or two such mortgages, to a fruit nursery concern in Pike county called Stark Brothers, the nature of which was an agreement on the part of the nursery concern to furnish a certain number of fruit trees to be planted on the farm and in payment for which they were to have the fruit crops for any

two years within fifteen years to be selected by them, and Tyson agreed not to sell the land until that obligation was satisfied. Those so-called mortgages were duly recorded; there was also evidence showing that Woods had actual knowledge of them. In this condition Tyson applied to defendant corporation through Woods for a loan of $250 to be secured by a mortgage on his farm. The application for the loan was made out on an elaborate printed blank furnished by Woods for the purpose, signed and sworn to by Tyson before Woods as notary public. In this application one of the questions asked is, is the land free from incumbrance, and the answer is yes. The application was favorably received by the defendant corporation and in pursuance thereof Tyson and wife signed an obligation subscribing for $1,000 of stock in the corporation, assigning it to the corporation as collateral for the prospective loan, agreeing to pay semi-annually, dues, interest and premiums thereon amounting to $34.50 for a period of 144 months, and at the same time they executed the deed of trust in question on their farm to secure that obligation, in which deed among other penalties it is stipulated that if default be made in any one of the semi-annual payments the whole obligation may be treated as due, the collateral sold, the deed of trust foreclosed and Tyson held for the balance. Tyson also at the same time signed a paper in the form of an order on the corporation to pay the amount of the loan to Woods and that order should be a receipt for the same. Woods testified that it was the invariable practice, when a loan was made through his agency, that the borrower gave him an order on the company for the proceeds of the loan and the company would send the money to him, giving him directions what amount of it he was to deduct for expenses and how much he was to pay over to the borrower, and that in all such matters he obeyed the company's instructions as its agent;

that in this instance the company retained $41.50 out of the $250, being the $34 for the first semi-annual payment of dues interest and premium, $2.50 membership fee and $5 for examining title, and sent him, Woods, the balance $208.50 with directions to pay off the fruit tree mortgages and some other small items of expense and pay the balance over to Tyson. At that time the nursery company was owing Woods, and he arranged with them to release the fruit tree mortgages for $150, for which he gave them credit on his account, and took the $150 to himself out of the $208.50 the defendant had sent him as the proceeds of the plaintiff's loan. The Nursery people gave him a deed of release of their claims, which was duly recorded. Who filed that release for record does not very satisfactorily appear from appellant's abstract. After deducting the $150 and about $3 for some other expense items Woods tendered the balance, say about $55, to the plaintiff Tyson, as the net proceeds of the transaction, which Tyson refused. After the controversy had thus arisen, the president of the company came to the county and an effort was made to compromise it. This effort resulted in an agreement that Tyson should pay to the company the $41.50, Woods should refund the $208.50 to the company, and the deed of trust and obligation of Tyson should be cancelled. At the time appointed to consummate the matter, Tyson came forward ready to pay his part of the compromise agreement, but Woods did not respond, therefore the settlement failed, and this suit resulted.

After the suit had been begun the defendant gave notice to take depositions and caused a subpoena to be served on plaintiff to appear at the circuit clerk's office in the court house and testify as a witness for defendant. Plaintiff did not appear at the place designated and his deposition was not taken. Thereupon defendant filed a motion to strike

out plaintiff's petition and render judgment for defendant on its answer and cross-bill, but the court after hearing evidence overruled the motion and defendant excepted. On the hearing of the motion the evidence for defendant tended to show that the notice and subpoena were duly served, and plaintiff did not obey the writ. The plaintiff who was present was called by defendant as a witness on this question and testified that he came to the court house in obedience to the summons and waited in the hall nearly all day, but did not hear anybody call him and did not go to the clerk's office. He admitted that he talked with his attorney about it and he advised him to go home.

I. Sections 8920 and 8924, Revised Statutes 1889 (sections 4654 and 4658, Revised Statutes 1899), give the right to a party to call his adversary as a witness and impose on the party so called penalties for refusal to respond. This is a very wise provision of the code of procedure, taking the place of the old bill of discovery and affording a much more speedy and efficient remedy than was given in that mode. Since a party is liable to be called before a notary or other such officer not in the presence and under the protection of the court, the power conferred by the statute is liable to be and sometimes is abused, but on the whole its results are good, and experience has approved it. As a general rule the high character of the men in the legal profession afford all the security against abuse that is required, but when over-zeal carries one beyond reasonable limits, the safeguard then lies in the sound discretion of the court when called upon to impose the penalties prescribed by the statutes on the party who has refused to testify at the call of his adversary. The striking of his pleading from the files involves his whole case, and is a consequence one is not likely, without what at least seems to him to be good reason, to incur. A party in the exercise of this right to search the conscience of his adver-

sary should be given as large liberty as the right and justice of the occasion demands, yet it should be kept in mind that the only legitimate purpose of taking the deposition is to use it as evidence in the trial of the case and when the court is satisfied that the only purpose for which the deposition is sought is ulterior to that, the court is not required, and should not, impose the penalty prescribed by the statute on the party refusing to submit to the examination. The discretion in the trial court is not absolute nor entirely beyond the control of the appellate court on appeal, but still the power to strike out one's pleading for refusal to give his deposition is within the discretion of the court to be exercised with justice and wisdom, in view of the surroundings, and when so exercised the court's action will be approved. [Haskell v. Sullivan, 31 Mo. 435; Larimore v. Bobb, 114 Mo. 446; Matthews v. Railroad, 142 Mo. 645.] We are satisfied that the trial court exercised its discretion with wisdom and justice in this instance.

II.   Upon the merits of the case, we have no doubt that the decree was right. The only ground that affords even a color of justification for the defendant's conduct is the written order signed by plaintiff on defendant to pay the money to Woods. But defendant was not misled by that order; it knew that Woods was not the agent for the plaintiffs, it knew that that was the course of all loans passing through that agency, it knew that that order was only one of its own over-cautious methods for conducting its business. As a business method it was a mere device to shift upon its customers the responsibility for the possible misconduct of its own agent. It is the duty of a chancellor to brush away the mere sham-covering of such a transaction and lay hold of the real facts, and the learned chancellor in this instance did so. Woods testified in a sort of uncertain way that Tyson had authorized him to pay off the fruit tree mortgages,

but Tyson testified absolutely to the contrary, and even with Tyson's testimony out of the way the story is improbable. Tyson wanted that $250 for a purpose. There was no pressing demand of the nursery men; they were entitled to two crops of fruit within the fifteen years, and there is nothing to show that either they or Tyson were concerned about a settlement. The conclusion on Woods' own testimony is irresistible that he saw an opportunity to cash his debt against the nursery men and availed himself of it. The learned counsel for defendant say that Tyson has accepted the benefit of Woods' transaction with the nursery people and ought not to object to it. True, the release of the fruit tree contracts is on record, but who filed it for record is not very clear. The inference is rather that Woods did it.

But, however that may be, the conduct of the defendant in paying off or buying off those fruit tree contracts was a mere voluntary intermeddling with plaintiff's affairs, for the consequences of which the plaintiffs are not responsible, and defendant has no right to complain. The result of the whole business is, that the defendant holds the plaintiffs' obligation and deed of trust which were executed with the expectation on their part of getting a loan of $250, but for which they have never received a cent.

The trial court took a correct view of this case and its judgment is affirmed.

All concur.