MARY MORLEY, Appellant, v. CATHERINE PRENDIVILLE.—295 S. W. 563.

Division Two, April 9, 1927.

**1. WITNESS: Death of Other Party to Transaction: Waiver: Discovery of Assets: Gift.** The incompetency of a witness because the other party to the transaction is dead may be waived, and if once waived it will be deemed waived for all further purposes of the proceeding. In a proceeding to discover assets of deceased's estate, claimed by the defendant as a gift, wherein the party instituting the proceeding stands in the place of deceased, an examination of defendant under oath in the probate court prior to the filing of interrogatories waives the incompetency of such defendant to testify in a subsequent trial before a jury in the circuit court to which the proceeding is taken by appeal. [Following Trautmann v. Trautmann, 300 Mo. 314.]

**2. DISCOVERY OF ASSETS: Gift: Substantial Evidence.** Clear and consistent testimony of the donee, in a proceeding to discover assets of the deceased's estate, that the bonds sought to be recovered were given to her by decedent, when corroborated by disinterested witnesses as to the unconditional nature of the gift, is substantial evidence to support the donee's claim of ownership, and requires an overruling of a demurrer to the evidence.

**3. GIFT: Inter Vivos: Instruction.** In a proceeding to discover assets, wherein defendant claims that the bonds sought to be recovered were given to her by deceased in his lifetime, an instruction which directs a verdict for her if the jury finds that on a named date deceased, in the presence of defendant, "removed said bonds from said deposit box and stated to defendant that he wished said bonds to be hers and that he then and there unconditionally delivered said bonds into her possession with the intention of transferring to her all his right, title and interest therein, and that she then and there received and accepted said bonds and that they remained in her possession thereafter" is not a misdirection because it does not require the facts to be found from evidence establishing them clearly and unequivocally and beyond a reasonable doubt, but enumerates every fact necessary to be found by the jury in order to return a verdict for defendant; and the character of the evidence necessary to establish the enumerated facts and the degree of conviction which such facts must produce are matters to be covered by instructions for plaintiff, and if the instructions given for plaintiff do cover them there is no ground to complain of said instruction.

4. ——: ——: ——: **Covered by Others.** It is not error to refuse an instruction whose every allowable hypothesis is fully covered by others given.

5. **INSTRUCTION: False Issue: Gift to Take Effect after Death: Prior Explanatory Declarations.** An instruction which seeks to submit a false issue should not be given. An instruction which tells the jury that "if deceased made a gift of the bonds to defendant to take effect after his death, yet if you further find that deceased thereafter retained control and dominion over said bonds, then the verdict should be for plaintiff" should not be given, where there is no issue concerning a gift to take effect after decedent's death, but the sole issue is whether the transaction on a named date was a valid gift **inter vivos.** Nor does evidence of previous declarations of deceased that upon his death the bonds should belong to defendant justify the giving of such instruction, where the declarations were introduced in evidence merely to show a long-existing purpose and as explaining the intention of deceased when he later delivered the bonds to defendant and relinquished control over them.

6. **VERDICT: In Proceeding to Discover Assets.** Where the gravamen of the action is to discover assets belonging to the estate of deceased, alleged to be wrongfully withheld by defendant and claimed by defendant as a gift, a verdict that "we, the jury in the above entitled cause, find that Catherine Prendiville is not concealing or wrongfully withholding any property from the estate of Jeremiah Prendiville, deceased," is responsive to the issues and is not subject to tenable objection, where the property withheld by defendant is shown by the evidence to belong to her.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 3204, p. 1175, n. 37. **Executors and Administrators,** 23 C. J., Section 409, p. 1186, n. 38, 39; Section 421, p. 1189, n. 95 New. **Trial,** 38 Cyc., p. 1615, n. 22; p. 1619, n. 38; p. 1711, n. 19; p. 1753, n. 44; p. 1785, n. 90; p. 1884, n. 91. **Witnesses,** 40 Cyc., p. 2344, n. 36.

Appeal from Circuit Court of City of St. Louis.—*Hon. Claude O. Pearcy,* Judge.

Affirmed.

*John P. Leahy* and *Wilbur Schwartz* for appellant.

(1) In order to constitute a valid gift of personal property it is essential that it be delivered by the donor to the donee or someone for him, with the intention on the part of the donor to part with his right in and dominion over the subject of the gift, and that it be accepted by the donee, whose ownership must take effect immediately and absolutely, leaving nothing to be done in the future. Foley v. Harrison, 233 Mo. 537; 8 Ency. Law, 1313; Spencer v. Vance, 57 Mo. 429. (2) In order to constitute an effectual delivery the donor not only must have parted with the possession of the property, but he must also have relinquished to the donee all present and future domonion and control over it beyond any power on his part to recall. Harris Banking Company v. Miller, 190 Mo. 640; Reynolds v. Hanson, 191 S. W. 1030; Chambers v. McCreery, 106 Fed. 364. (3) If the gift does not take effect as an executed and completed transaction

to the donee either legally or equitably during the life of the donor, it is a testamentary disposition, good only when made by valid will. 28 C. J. 624, sec. 11; Taylor v. Hamiser, 179 Ill. 137. (4) A gift of property to take effect after the donor's death, the donor in the meantime retaining the control and dominion of the property, cannot be sustained. Such gifts are in contravention of the statutes governing the testamentary disposition of property. Spencer v. Vance, 57 Mo. 427; Tye v. Tye, 88 Mo. App. 330; Tygard v. McComb, 54 Mo. App. 85; Keyl v. Westerhaus, 42 Mo. App. 49. (5) The burden of proving that the deceased made a valid *inter vivos* gift of the bonds rests upon the defendant. Jones v. Fall, 101 Mo. App. 544; In re Estate of Soulard, 141 Mo. 642; Tygard v. Falor, 163 Mo., l. c. 245. (6) An instruction which assumes to cover the whole case and to direct a verdict is erroneous where it fails to submit a material issue in the case. Showen v. St. Ry. Co., 164 Mo. App. 41, 148 S. W. 135; Thornton v. Mersemeau, 168 Mo. App. 1, 151 S. W. 212; Birch Tree State Bank v. Dowler, 167 Mo. App. 373, 151 S. W. 784; Johnson v. Stewart & Hay Bldg. Co., 171 Mo. App. 543, 153 S. W. 511; Beggs v. Shelton, 155 S. W. 885, 173 Mo. App. 127. (7) Each party is entitled to an affirmative submission of his theories of the case, which is justified by law. Cahn v. Reid, 18 Mo. App. 115, Livingston v. Maryland Ins. Co., 7 Cranch. 506, 544; Collins v. Rankin Farms, 180 S. W. 1052. (8) Where one of the original parties to the contract or cause of action is dead, the other party to such contract or cause of action shall not be admitted to testify in his own behalf. Sec. 5410, R. S. 1919.

*Igoe, Carroll, Higgs & Keefe* for respondent.

(1) Defendant was properly permitted to testify in her own behalf. (a) Her disqualification under the statute extended only to transactions between herself and the deceased as to which she might be contradicted by the deceased if living. Elsea v. Smith, 273 Mo. 396, 202 S. W. 1071. (b) And all disqualification had been waived: By examining defendant under oath in the probate court after she had been cited to appear there concerning the various transactions with the deceased as to which she was disqualified to testify. In re Trautman's Estate, Trautman v. Trautman, 300 Mo. 314, 254 S. W. 286. By failing to object to her testimony as to such transactions on trial of the same issues in the probate court, thereafter cross-examining her as to such transactions. Tierney v. Hannon's Executor, 81 Mo. App. 488; Rice v. Waddill, 168 Mo. 99. (2) There was ample and convincing evidence of the gift from Jeremiah Prendiville to defendant, which was properly submitted to the jury. Townsend v. Schaden, 275 Mo. 227, 204 S. W. 1076; Sexton v. Sexton, 295 Mo. 134,

243 S. W. 315; Feil v. Wells, 268 S. W. 893; Ray v. Hooper, 204 S. W. 30; McCune v. Daniels, 251 S. W. 458; Reynolds v. Hanson, 199 S. W. 279. (3) The jury was fully and properly instructed as to the elements of a valid gift *inter vivos* and the character of proof necessary to establish such a gift. Plaintiff's instructions A, B and C were properly refused. Ray v. Hooper, 204. S. W. 30; Townsend v. Schaden, 275 Mo. 227, 204 S. W. 1076; Feil v. Wells, 268 S. W. 893. (4) The verdict of the jury is responsive to the issues and follows the established form in such cases. Secs. 62, 63, 64, 65, R. S. 1919; Tygard v. Falor, 163 Mo. 234, 63 S. W. 673; Denny v. Brown, 193 S. W. 552; In re Huffman's Estate, 132 Mo. App. 44.

WALKER, J.—This is a suit arising out of a proceeding to discover assets of an estate under Article II, Chapter 1, Revised Statutes 1919. The plaintiff, as the residuary legatee of the estate of Jeremiah Prendiville, deceased, filed an affidavit in the Probate Court of the City of St. Louis, alleging that the defendant had concealed and appropriated to her own use certain Liberty bonds belonging to said estate, and asking that the defendant be cited to appear before the court to answer such questions as may be propounded to her touching her possession and retention of said bonds and for further relief. Upon being cited and appearing before the court for examination the defendant denied the allegations of the affidavit. Whereupon the court ordered that written interrogatories be filed and that the defendant answer the same in writing. The executor of the estate then filed formal interrogatories. The gist of these interrogatories was to inquire if the defendant had in her possession any United States bonds which belonged at any time to the deceased, their numbers, nature and description, the conditions under which she obtained them; what, if anything, she paid for them; where the same were deposited when she obtained them, and the circumstances connected with her acquiring them; what, if any, conversation occurred between herself and the deceased after she acquired the possession, and who was present; what was the condition of the health of the deceased at the time.

The defendant answered that she had certain bonds in her possession in which the deceased at one time had an interest, which was a joint one with the defendant. She enumerated and described the bonds; stated where they were kept before she became the sole owner of the same and thereafter; and the circumstances in detail under which she became the sole owner; that she paid nothing for the bonds. In addition and at great length she stated the facts under which the deceased gave her the bonds and all of the facts and circumstances connected therewith. That at the time the bonds were given to her by the deceased, who was her uncle, he was in good health, but had been ill several months prior thereto.

The executor replied to said answers denying specifically each of the same, and stating with unusual prolixity much matter of an evidentiary nature which cannot be properly classified as a reply to the answer. The cases was tried in the probate court without the intervention of a jury and an order of dismissal was entered. The plaintiff thereupon applied for and was granted an appeal to the circuit court, where a trial was had before a jury, which found that the defendant was not wrongfully concealing or withholding any property from the estate of the deceased. It was thereupon ordered by the court that the application of the plaintiff, Mary Morley, legatee under the will of Jeremiah Prendiville, deceased, for citation to Catherine Prendiville, the defendant, be dismissed and that she be discharged from the citation and go hence without day and recover her costs, to be paid out of said estate, and that a copy of this judgment with the original files be certified to the probate court. Thereafter, in conformity with the required procedure, the case was appealed to this court.

Jeremiah Prendiville, deceased, whose estate is involved in this controversy, was for many years a dealer in meat in the Union Market in the city of St. Louis. He was unmarried and at the time of his death, which occurred in November, 1921, he was sixty-nine years of age. For two months preceding his death he had resided at the home of the mother of the defendant in the city of St. Louis. The mother was a sister-in-law of the deceased, and the defendant his neice. The testimony of the latter was substantially as follows: In June, 1911, she went with her uncle, the deceased, to the Mercantile Trust Company, and he rented a safe deposit box for their joint use and each of them signed a card for the same. Her uncle put about $20,000 worth of deeds of trust, together with the notes attached thereto, in the box. Subsequently she went with him at different times to the Trust Company and continued to do so until December, 1920, the year before his death. When he put the notes and deeds of trust in the box taken by him and her jointly he told her that in the event of his death the notes and deeds would be hers. At different times thereafter when a note would become due he would ask her what disposition she desired made of the money arising therefrom. In this connection Liberty bonds were spoken of, and he said he was loyal to his country and for himself he would not buy bonds but that he would buy them for her if she desired. As the notes secured by deeds of trust became due and were paid he would invest the proceeds in Liberty bonds and place them in the box held by them jointly. The bonds thus purchased aggregated $19,100, and are the bonds in this suit.

In June, 1921, at his request, she again went with him to the Trust Company. Thereafter while he was ill in a hospital he suggested

that upon his recovery they go to the Trust Company. He told her that he wanted her to go with him, as he wanted to give her the bonds and turn the box over to her. When he recovered they went to the Trust Company, and while there they took the bonds out of the joint box, which they surrendered. He turned the bonds over to her and at his suggestion she rented a box in her own name and deposited the bonds in it. When he gave her the bonds he said: ''Now these are yours to do as you please with, but as a suggestion I think it would be a good investment to take the money and build flats with it on the lot adjoining your home.'' He further said: ''You can ask Mr. Kamp'' (a real estate agent); ''I have always found him a good adviser in real estate matters and is now. . . . But you ask him and see what he thinks about it.'' After June 7, 1921, when the bonds were delivered to the defendant, he never again had possession of them. Thereafter the possession of them by the defendant was continuous, and she collected the interest coupons thereon as they became due. Her uncle died November 23, 1921, and during the last two months of his life he was cared for by her mother and herself. When ill on previous occasions he had been cared for in a hospital, but had been discharged therefrom in September, 1921. He was not ill when he gave the bonds to the defendant, June 7, 1921, but had been attending to his business at the Union Market. This constitutes in the main the direct testimony of the defendant. Her cross-examination is principally in regard to her former testimony for the purpose of impeachment. The variance in her testimony from that on former hearings was explained to the satisfaction of the jury or was not deemed material.

Records of the Trust Company were introduced corroborative of her testimony in regard to the rental of the joint and separate boxes. Kamp, the real estate agent, testified to conversations with the deceased in which the latter said he wanted Catherine, the defendant, to have the bonds and that he intended to give them to her. Subsequently he told the witness that he had turned the bonds over to her and that she had them in her own box.

The executor's testimony on behalf of the plaintiff was principally in regard to the condition of the health of the deceased while he was in the hospital, and that the defendant had told him, the witness, that she had the bonds and thought her uncle had given them to her.

The plaintiff testified in regard to the social relations sustained by the deceased to the different members of his family; the effect of which was to show that his relations to her own immediate family were friendly, but that they were not so towards the family of the defendant. The hospital record of the condition of the deceased up to September preceding his death was introduced in evidence, showing that he was at times irrational during his illness. No evi-

dence was offered to show a like condition at the time the evidence discloses he gave the bonds to the defendant.

If necessary to a determination of the matter at issue any relevant facts not set forth in the foregoing statement will be discussed in the opinion.

I.  The competency of the defendant as a witness is challenged on the ground that the other party to the transaction is dead.  This question received considerate attention in Trautmann v. Trautmann, 300 Mo. 314, in an opinion by RAGLAND, J., in which, while conceding the application of the rule generally, he held that **Incompetency:** the same might be waived.  In the Trautmann case, **Waiver.** as at bar, the proceeding was to discover assets; the plaintiff was a distributee and the defendant was charged with wrongfully withholding certain personal property belonging to the estate.  There, as here, the defendant was offered as a witness, and her testimony was objected to for the reason that she was incompetent because the other party to the transaction was dead.  The defendant claimed that this objection had been waived and in support of this contention offered a transcript of her testimony given by her in the probate court prior to the filing of the interrogatories.  The circuit court held that there had been no waiver, and sustained the objection to the offer of the transcript.  After an exhaustive review showing the evolution and purpose of the statute authorizing suits for the discovery of assets the Supreme Court, in holding this ruling to be error, says:

"As the statute now stands the examination under oath of the person charged with withholding assets of an estate does not form the basis of any succeeding step to be taken in the proceeding; the right to compel such an examination is merely in aid of the original purpose of the statute, namely, that of discovery.  Such examination being merely auxiliary to the main proceeding, it follows that it may be demanded or not, as the person who initiates the proceeding elects.

"The statute under review, with reference to the provision authorizing the examination under oath of a party charged with withholding the assets of an estate, and the statute empowering one party to a civil action to compel his adversary to testify as a witness in his behalf, were both designed to accomplish the same purpose, namely, to afford a more speedy and efficient method of discovery than was given by bill under the old chancery practice; and both were enacted at a time when a party to a suit, under the laws of this State, was not a competent witness.  [Tyson v. Sav. & Loan Assn., 156 Mo. 588, 594; Matthews v. Railroad, 142 Mo. 645, 668.]  The necessary effect of both statutes was to remove such incompetency when

their provisions were invoked by those for whose benefit they were enacted. The only practical distinction between them at the present time is that the one relating to discovery of assets affords the plaintiff in such a proceeding the privilege of compelling the defendant to testify in advance of the filing of any pleading by himself. If in such case the plaintiff waits until the written interrogatories and answers are filed and then requires the defendant to testify, either on the trial, or by deposition, he clearly waives for all purposes of the suit, the defendant's incompetency arising from the death of the other party to the contract or cause of action; can plaintiff by calling defendant in advance of the framing of the issues, under the permissive authority of the statute, avoid such waiver?

"One of the purposes to be subserved by the statute which renders a party incompetent to testify in his own favor when the other party to the contract or cause of action in issue and on trial is dead is the putting of the parties to a litigated controversy, in those circumstances, on a footing of equality. Where the lips of one of the original parties to such contract or cause of action are sealed in death, the law closes the mouth of the other. As, however, the disqualification imposed by the statute is for the benefit of him who stands in the place of the deceased party, or whose rights are derived through him, he may waive it and require the surviving party to testify as a witness in his behalf. In doing so, however, he may not limit his waiver. He cannot so restrain the competency of the witness that the latter can only testify to such subject-matter and under such circumstances as will be beneficial to him. His waiver will be deemed to be for all purposes; otherwise, the statute itself would become an instrument of injustice. [Ess v. Griffith, 139 Mo. 329; Strode v. Frommeyer, 115 Mo. App. 220.]"

There is, therefore, no merit in the plaintiff's contention in this behalf.

II. A fair review of the evidence furnishes no support for the contention that the testimony does not support the verdict. The testimony of the defendant is clear and convincing and it is corroborated in its material features as to the unconditional nature of the gift of the bonds to her by the records of the Trust Company and the testimony of Kamp, the real estate agent, a disinterested witness. To hold, therefore, under this state of the facts, that the evidence to support the defendant's claim of ownership was not substantial would be to ignore the probative force of not only uncontradicted but corroborated testimony. The demurrer to the evidence was therefore properly overruled.

**Demurrer to Evidence.**

III.  The only instruction given on behalf of the defendant was Number One, which directed a verdict for the defendant if the jury found that on June 7, 1921, "said Jeremiah Prendiville, in the presence of Catherine Prendiville, removed the said bonds from said

**Instructions.**  deposit box and stated to Catherine Prendiville that he wished said bonds to be hers and that he then and there unconditionally delivered said bonds into her possession with the intention of transferring to her all of his right, title and interest therein, and that said Catherine Prendiville then and there received and accepted said bonds and that they remained in her possession thereafter.''

Three instructions, numbered 2, 3, and 4, were given at the instance of plaintiff.  Number 2 told the jury that "the defendant must not only prove to your satisfaction and beyond a reasonable doubt and by evidence clearly unequivocal that the said Jeremiah Prendiville, deceased, not only placed the said bonds or directed the defendant to place them in the safe deposit box of the defendant in the vaults of the Mercantile Trust Company of the city of St. Louis, during the life of said Jeremiah Prendiville, but that in placing or directing the said defendant to place the said bonds in the box rented by the defendant in the vaults of the said Mercantile Trust Company the said Jeremiah Prendiville did make a gift of the said bonds to the defendant by use of words stated to the defendant clearly and unequivocally indicating his desire to make a gift of the said bonds to the defendant and to relinquish all ownership or control over same, and unless you so find your verdict should be for the plaintiff.''

Instruction Number 3 told the jury that in order to justify a finding that Jeremiah Prendiville had made a valid gift of the bonds in question it must be found (1) that he was of sound mind at the time, understanding the effect of his act and intending that effect; (2) that he actually delivered the bonds to defendant; (3) intending by such act to pass title to the said bonds to take effect immediately; and (4) that defendant accepted the bonds as a gift.

By plaintiff's Instruction Number 4 the jury was instructed that if it found that the deceased, Jeremiah Prendiville, did not intend to relinquish his right to the possession and control of the bonds, but retained the same, and that Catherine Prendiville did not assert title to possession thereof until after the death of said deceased, then the jury was authorized "to require the strictest proof on the part of Catherine Prendiville that the alleged gift of said bonds was made to her during the lifetime of the said deceased, and unless you so find your verdict should be against Catherine Prendiville, the defendant in the case, and in favor of the plaintiff in the case.''

Appellant assigns error (but does not argue the matter) in the giving of Instruction Number One for the defendant because said

instruction does not require the facts to be found from evidence establishing them clearly and unequivocally and beyond a reasonable doubt. In instructions numbered 2, 3 and 4 the jury was instructed as to the character of evidence required to establish the gift and that it must convince them beyond a reasonable doubt. There is no misdirection in Instruction Number One. It simply enumerates the necessary facts to justify a verdict for the defendant, directing such a verdict if the facts were found as enumerated. The character of evidence necessary to establish the facts and the degree of conviction which such evidence must produce were matters covered in the other instructions and there was no room for misapprehension as to their meaning. An objection to an instruction very similar to Instruction Number One was overruled by the Kansas City Court of Appeals in the case of Ray v. Hooper, 204 S. W. l. c. 31.

Complaint is made of the refusal of appellant's Instructions A, B and C. Instruction A, in so far as it states allowable hypotheses from the evidence, is fully covered by the instructions given, particularly No. 4. Moreover, this instruction contains an hypothesis without basis in the evidence, viz., "that the said bonds were so placed in the defendant's box merely for the purpose of permitting the said defendant to have access to the said box and to the control of said bonds as agreed by the said Jeremiah Prendiville." The evidence was that the bonds were in a box to which defendant had access even prior to June 7, 1921. There is no suggestion in the evidence to support this hypothesis.

Instruction B sought to submit a false issue, i. e., that if "the deceased, Jeremiah Prendiville, made a gift of the bonds mentioned in the evidence to the defendant to take effect after his death, yet if you should further find and believe from the evidence that said Jeremiah Prendiville thereafter retained control and dominion over the said bonds, received the coupons due on said bonds and collected the interest due upon same, then the verdict should be for the plaintiff." There was no issue in the case concerning a gift to take effect after death. The question was whether the transaction of June 7, 1921, was a valid gift *inter vivos*. There was evidence of previous declarations of the deceased, Jeremiah Prendiville, that upon his death the bonds should belong to the defendant, but these declarations were introduced in evidence merely to show a long-existing purpose and as explaining the intention of the deceased when he later delivered the bonds to the defendant and relinquished all his control. As the case was tried defendant was required to prove the gift of June 7, 1921, in order to justify her possession. Instruction B did not go to that issue and was properly refused.

Instruction C is mere repetition of the directions contained in instructions numbered 2 and 4 and therefore was properly refused.

The instructions given show that the jury was fully directed as to the proof required to establish a gift and cautioned that to justify a verdict for the defendant they must be convinced beyond a reasonable doubt of·the existence of the elements which make a valid gift.

IV.  Plaintiff complains of the form of the verdict and the failure of the trial court to submit proper forms.  The verdict **Verdict.** returned by the jury, omitting the signature of the foreman, is as follows:

"We, the jury in the above-entitled cause, find that Catherine Prendiville is not concealing or wrongfully withholding any property from the estate of Jeremiah Prendiville, deceased."

The gravamen of this action was to discover assets belonging to the estate of the deceased.  The evidence showed and the jury found that the defendant was not concealing or wrongfully withholding any property from said estate.  The verdict thus rendered was therefore responsive to the issue made and it is not subject to tenable objection.  It is true that in a trial of this character the court may try the title to disputed property and if·one complained against is found to be wrongfully in possession of the same he may be compelled by summary process to deliver it to the administrator.  [Dameron v. Dameron, 19 Mo. 317; In re Huffman's Est., 132 Mo. App. 44, 111 S. W. 848.]  However, no such question arises here.  The property alleged to be withheld by the defendant was shown to belong to her;·and the issue made was responsively met by the jury in finding that she was not wrongfully withholding any property belonging to the estate of the deceased.  This being true, of what material concern can it be to the plaintiff or the executor of the estate that ·the jury did not find that the property in dispute belonged to the defendant?  We are commanded by the statute not to reverse a judgment unless we believe that error has been committed which materially affects the merits of the controversy to the injury of the plaintiff.  [Sec. 1513, R. S. 1919.]  That condition does not exist here.

The judgment of the circuit court is affirmed.  All concur.