Louis Berton Lewis v. Illinois Central Railroad Company, Appellant.—3 S. W. (2d) 371.

Division One, March 3, 1928.

*Watts & Gentry* for appellant; *Vernon W. Foster* of counsel.

*William W. Sleater, Jr.* and *George T. Meyer* for respondent; *Frank J. Kolbohm* on the brief.

RAGLAND, J.—Action for personal injuries alleged to have been negligently caused.

Defendant was a carrier of passengers by rail. Plaintiff in attempting to leave one of its trains while in motion fell and received the injuries for which he seeks a recovery. The facts and circumstances leading up to and attending the occurrence, as detailed by him from the witness stand, are as follows:

"On the morning of the 16th of September, 1923, I went to the Illinois Central Depot in Murphysboro to help my wife on the train. I then lived about five blocks from the depot. My wife was coming to St. Louis. I was carrying her grip. We walked to the station, leaving home about 3:30 in the morning, and I guess it took us about fifteen minutes to walk to the station. My wife was weak, and I

walked slow with her. The train had not pulled in when we arrived at the station. In the waiting room I set my wife down and I went to the ticket office to buy a ticket. I gave the agent a five-dollar bill and bought one ticket. The train came in while the ticket agent was giving me my change. I then went back where my wife was and we started to the train. It was dark at that time of the morning in September. We went to the front steps of the day coach where the door was open. The train porter was standing at the entrance to the day coach. When we started from the waiting room to the train, my wife went a little ahead of me and I stopped to pick up the grip and held the door open while she went out, so that she was a few steps ahead of me when we got to the train. The porter asked us for tickets. She told him she was going to St. Louis and he made us show her ticket. When I got up to him and he asked for my ticket, I told him I had no ticket, that I was not going anywhere, but was only helping my wife on the train as she was sick, and he said, 'All right.' I went in with her to get her a seat. I got on the front end of the coach. The train was pretty crowded, and I had to walk to the rear end of the coach to get her a seat, and when I got there I kissed her and put her grip down and started back. Before I got to a seat the train started in motion. After the train had started and I had set my wife down, I went towards the place where I had got on. To get to the door, I had to come back to the north end of the coach where I had got on. When I reached the north platform of the coach, the train porter and the trainman that I took to be the conductor was standing there. I told the porter I wasn't going anywhere and I wanted to get off. He opened the vestibule door, stepped over and raised up the trap door in the platform and said, 'All right, get off.' . . .

"When the porter had opened both the vestibule door and the trap door, the vestibule door swung inward, and then the trap door laid right up against it, fastened to a railing and a railing was placed over that so the people could hold onto the railing as they went down. Then the porter started to go into the coach and I started out, and our shoulders bumped together as we passed each other, and I was just fixing to step down off the platform. When his left shoulder struck my left shoulder it knocked me on down towards the bottom of the steps, not backwards but forwards. I grabbed hold of the rail on the right side as I went down those steps. I went down rapidly, only touching one of the steps, and then I swung off, my hold breaking when I reached the bottom. It was then that I fell, and my foot came under the wheel and was crushed. I had had a little drink of 'white mule' about twelve o'clock that night. I didn't have it at home, but went out to get it. I don't remember whether I had one or two drinks. I went to bed about twelve o'clock that night, and got up while my wife was getting ready to go to the train."

Defendant called a number of witnesses who testified that plaintiff was in a state of intoxication at the time he boarded the train. The symptoms of that condition as observed by them varied all the way from merely an alcohol-laden breath to staggering drunkenness. But no witness saw plaintiff fall, and no one except the train porter saw him leaving the train. The porter testified that after the passengers had all gotten on he went forward to assist in loading the baggage, leaving the vestibule open; that after the baggage had been disposed of he gave the engineer the signal to start and as the open vestibule of the train came alongside he swung on; and that as he started up the steps he met plaintiff coming down. Plaintiff merely said, "Let me off." He denied that he collided with plaintiff.

The petition charged negligence as follows:

"(1) That defendant's employees in charge of said train of defendant failed to use due care for plaintiff's safety in that they negligently and carelessly failed to allow plaintiff a reasonable time in which to seat his wife in said car and to leave said car of defendant before starting same, when they knew plaintiff was still aboard and for what purposes, or by the exercise of due care could have so known plaintiff to be still aboard.

"(2) That defendant's employees in charge of said train failed to use due care for plaintiff's safety in that they negligently and carelessly opened said vestibule door and raised said trap-door of said platform while defendant's train was in motion and while in close proximity to plaintiff.

"(3) That defendant's employees in charge of said train failed to use due care for plaintiff's safety in negligently and carelessly ordering plaintiff to get off while said train was in motion.

"(4) That defendant's employee on said train failed to use due care for plaintiff's safety in so negligently and carelessly conducting himself on the platform of defendant's car while arranging same so plaintiff could at the proper time depart therefrom, and while in close proximity to plaintiff, said train being in motion and said vestibule door and trap open, so as to brush, push and shove against plaintiff, causing plaintiff to lose his balance and fall from and under said car and train."

The answer consisted of a general denial and a plea that plaintiff was guilty of negligence which contributed to cause his injury, in this, that he was intoxicated, and that while in that condition he attempted to leave the train while it was in motion.

There was a verdict and judgment in the trial court in favor of plaintiff for $10,000; defendant appealed.

I. Appellant's first contention is that its demurrer to the evidence offered at the conclusion of the trial should have been sustained. In

support of that contention, it says that no causal connection was shown between any of the acts charged as negligence in the first three specifications of the petition and plaintiff's injury, and that as to the fourth the evidence wholly failed to show that the collision between the train porter and plaintiff was the fault of the porter rather than that of the plaintiff. This calls for a brief review of the facts which the evidence tended to prove. The respondent having gone on appellant's train for the purpose of assisting his wife, who was a passenger, his status while there was that of invitee—if not passenger. [Elliott on Railroads (3 Ed.) sec. 2388, pp. 23-24.] Appellant knew that respondent intended getting off of the train as soon as he had completed the service he was rendering one of its passengers. It was bound therefore to exercise at least ordinary care in affording him an opportunity to do so with safety. [Doss v. Railroad Co., 59 Mo. 27.] Notwithstanding, it negligently started the train before he had had a reasonable time within which to seat his wife, deposit her baggage and make his exit. The starting of the train, however, did not put an end to appellant's obligation to afford respondent a safe means of getting off the train. Until he had safely left the train that duty was a continuing one. Notwithstanding, when he told appellant's servants that he wanted to get off, they, instead of pulling the bell cord and stopping the train, negligently opened the vestibule doors and directed him to get off while the train was in motion. And after doing that they then negligently failed to allow him to have a free and unimpeded passageway for his necessarily hurried exit over the platform and down the steps. These several acts were not independent of each other; they united in one act of negligence—the negligent failure to afford respondent an opportunity of getting off the train in safety; and so concurred in causing his injury. [Burger v. Ry. Co., 112 Mo. 244-245, 20 S. W. 439; Newcomb v. Railroad, 182 Mo. 721, 81 S. W. 1069.] In saying that the appellant did the things just mentioned and that they constituted negligence, we mean merely that, under the evidence, a jury would be warranted in so concluding. Appellant's contention under this head is disallowed.

II. Appellant's second contention is that the court gave at plaintiff's instance two erroneous instructions on the issue of contributory negligence. The instructions were as follows:

"4. The court instructs the jury that if they find and believe from the evidence that at the time plaintiff was on defendant's train plaintiff was intoxicated, such intoxication amounts to nothing unless you further find and believe from the evidence that it was of such a degree and extent as to so impair his physical and mental faculties so that he was unable to control his movements

in a normal manner and defendant's agents and servants in charge of said train were unable to render him ordinary care to prevent him from being injured and such a condition directly contributed to the injuries of the plaintiff. Drunkenness or intoxication will not as a matter of law establish contributory negligence, but is merely a fact which should be considered in determining such question, and the burden of proving, to the satisfaction of the plaintiff, if you so find the fact to be, was the direct cause of said injuries, rests on the defendant.

"5. The court instructs the jury that where one is rightfully on a train used for the conveyance of passengers and while said train is in motion he is ordered to get off said train by an agent or servant of the carrier in charge of said train and acting within the scope of his authority he cannot be charged with contributory negligence for complying with such a negligent order."

The contributory negligence with which plaintiff was charged was: That owing to his intoxicated condition he was unable to control his mental activities and his physical movements in a normal manner; that while in that condition he attempted to get off the moving train; and that as a result of his intoxicated condition *and* his attempting to leave the train while it was in motion he fell and received his injury. Instruction 4 told the jury that plaintiff's intoxication amounted to nothing, unless they found it was of such a degree that it rendered him unable "to control his movements in a normal manner." In other words, if he could walk and handle himself physically in a normal manner, the heedlessness of the dangers incident to stepping from a moving train which the "white mule" might have engendered amounted to nothing. This was error. "The fact of intoxication, no matter to what extent, was a fact to be considered by the jury." [Buddenberg v. Trans. Co., 108 Mo. 394, 401, 18 S. W. 970.]

The instruction was also erroneous in telling the jury that defendant had the burden of proving "that the degree or extent of intoxication of the plaintiff . . . was the direct cause of said injury." It was sufficient to defeat plaintiff's action, if his intoxication contributed to cause his injury.

Instruction 5 was misleading. There was no evidence that plaintiff was "ordered to get off said train." Upon his expressing a desire to get off, the porter opened the vestibule door to enable him to do so, and said, "All right, get off." This was all the evidence which had any bearing on the matter and it cannot reasonably be construed to be a command to get off. It was merely a direction; or possibly an assurance that respondent could get off with safety in the way pointed out.

The issue of plaintiff's contributory negligence was a vital one in the case; inaccurate and misleading instructions with reference to that issue were therefore necessarily prejudicial.

Plaintiff's principal instruction, numbered 1, was also faulty. It permitted the jury to find that the opening of the outside vestibule door and the lifting of the trap door by the porter constituted causal negligence; whereas, these acts were merely incidental to his direction to respondent to get off of the train while it was in motion. It also submitted the question of whether defendant's servants "negligently ordered plaintiff off said train." As already pointed out, there was no showing that plaintiff was "ordered" off the train.

For the reasons noted the judgment is reversed and the cause remanded. All concur.