**Mary Evelyn ROGERS, Appellant,**

v.

**ATCHISON, TOPEKA & SANTA FE RAIL-WAY COMPANY, A Corporation, Respondent.**

No. 22177.

Kansas City Court of Appeals.

Missouri.

Nov. 7, 1955.

Donald L. Randolph, Kansas City, for appellant.

John H. Lathrop, Sam D. Parker, James F. Walsh, Jack W. R. Headley, Kansas City, for respondent.

DEW, Presiding Judge.

The plaintiff seeks to recover actual and punitive damages for certain alleged improper treatment accorded her by the defendant's conductor while she was a passenger on one of defendant's trains. She recovered a verdict for punitive damages only, $600, which the court later set aside and entered judgment for the defendant on the defendant's motion for judgment in accordance with its motion for a directed verdict. Defendant's alternative motion for a new trial was denied. Plaintiff has appealed.

In substance the petition states that plaintiff purchased a ticket at Kansas City, Missouri, entitling her to a trip on defendant's train from Kansas City to Temple, Texas and return, with first-class car accommodations; that when she boarded the train at Temple, Texas to start her return trip, defendant's agents, employees and servants refused to allow her to enter a first-class chair car, but forced her to take a seat in an inferior car. It is alleged that she was forced by the defendant to remain in such inferior car until she reached Wichita, Kansas, where she was allowed to ride in a first-class car. The petition states that the inferior car was dirty, and that she was compelled to sit on an uncomfortable and hard seat, equipped with a metal rod furnished as a foot rest which caused her left leg and foot to become sore, numb and painful; that being so forced to ride in an inferior car " * * * violated the Constitution and Laws of the United States, and that plaintiff suffered as a result of defendant's unlawfully burdening interstate commerce." It is further alleged that plaintiff was forced to ride in said inferior car as a result of a conspiracy between defendant's conductors to deprive plaintiff of equal protection of the laws, including the laws of Texas, Kansas and Missouri; that she suffered damage as a result of such treatment in the sum of $5,000; that the acts of the defendant were malicious, will-

ful and wanton, and that plaintiff is entitled to $5,000 punitive damages. The answer was in the nature of a general denial.

The only specification of misconduct or failure of duty submitted to the jury at the trial was in plaintiff's Instruction 1. That instruction, after telling the jury that defendant's passengers were entitled to substantially equal treatment, and that a common carrier is liable for wrongful acts of its conductors while in the discharge of their duties to passengers, then told the jury that if they believed that plaintiff entered defendant's train as a fare-paying passenger and while she was riding thereon as such, " * * * a conductor of the defendant intentionally prevented plaintiff by intimidation, if so, from entering a chair car with reclining seats, if you so find, then your verdict must be for plaintiff."

On this appeal the plaintiff submits but one point, namely, that she made a submissible case. Defendant strenuously denies that the plaintiff made a submissible case, and urges other points to justify the entry of judgment in its favor.

Plaintiff, a colored woman, testified that after having purchased a first-class chair car round trip ticket at Kansas City, Missouri, she traveled in a comfortable car on the defendant's Texas Chief, equipped with reclining seats and foot rests so adjusted as to permit her to ride practically as if·in bed, and that the equipment was adjustable by the mere pressing of a button. When she boarded the defendant's train at Temple, Texas to start her return trip she entered the front passenger coach. She said that in this car were the conductor, the porter, and many dirty people, children and adults, white and colored, and there were pieces of bread, orange peel, meat and other articles thrown about the car; that children's diapers were draped over the ends of some of the seats; that the car did not have reclining seats such as were in the car in which she had ridden from Kansas City, but did have reclining seats that would lean back, but not far enough to make her comfortable; that the foot rest hurt her foot which had already been injured; that there was no rug in the car, the seats were not as soft as the others, and the car was not cool as was the other car.

Plaintiff testified that when she first saw the condition in the car at Temple, she started to walk through it to the next car where she saw seats available. She said the conductor stopped her at the vestibule and inquired "Where are you going?" She answered: "I am going in here and find me a seat." He said: "You are not going no place. You are going to ride right here in this car." She said: "Well, this is not like the car that I rode in from Missouri to Temple." The conductor said: "You are going to ride in it whether it is like the car or not." Plaintiff then took a seat in the car as directed by the conductor. From time to time as the conductor and porter would come by she would inquire if she could have a seat in the other car. Later, when she was leaving the ladies' rest room, the conductor blocked the aisle and said: "You don't want to ride in this car. You are going to ride in this car until you get to Missouri." She said that when that conductor had left the train and after she arrived at Wichita, Kansas, the porter transferred her to a seat in the better car.

On cross-examination plaintiff's deposition was produced in which she had said: "Well, I couldn't see very much difference in the seat. The only thing I could see, you couldn't rest like you could in first-class chair car service." She was asked if the seat complained of had a button that could be pushed to let the seat back and she answered in the affirmative. She was asked: "Did it have a button just like the one you rode in from Wichita ʾto Kansas City, you could press and lean back?" She answered: "Yes." She testified that "You couldn't let that seat out like the car I rode in from Missouri to Temple. You could let it rear back and let the footrest out in under here and lay back almost like you was in a bed. "Q. Did the seat that you got in Temple, Texas, have a button which you could push, which would cause the back of it to move back? A. Yes; you could move back some."

She testified that the car had linoleum on the floor and that the seats were covered with plush and were not really hard, but not as soft as in the car at Kansas City. In her deposition she had been asked: "Q. This coach you were riding in appeared to be a new coach? A. I don't know, Mister; I didn't pay that much attention to that. "Q. Could you tell by the appearance of it and the condition whether it was a new or old coach? A. Honest, I wouldn't know, because I never paid that much attention to it." She said: "Frankly speaking, as I said before, I want to be as truthful as I can, I never paid too much attention as to what color of a car or the chairs was or nothing." She was asked: "Q. My question was, you stated on direct examination that there were white people riding in this car with you when you got on in Temple, Texas? A. There was some white in there, dirty. "Q. They were dirty white men? A. That is right, railroad. "Q. Did you object to riding in that car because of that? A. I objected to riding in that car because I paid for a first-class chair accommodation from here to Temple and back, and I objected. "Q. Did you object to riding with these white people that were dirty? A. It didn't make no difference what color a person would have been, if I had had the accommodation from here and there, color didn't make any difference." She later stated: "A. No; I wasn't objecting so much because the people was dirty. I were objecting because I had paid for first-class chair car accommodation from here to Temple and back and I was riding in this chair (car) which had the conductor, and newsstand, and soda water and apples, and oranges, and all of that stuff in it. That wasn't a first-class chair car accommodation back from Temple." She also stated there were some colored people in the same car, and that the conductor put the better dressed people in the other car. She said the colored porter also rode in that car, but she had no objection to him but that her objection was— "As I have before said, I had paid for accommodation for first-class chair car accommodation from here to Temple and back, and I don't think anyone, when they pay to ride in comfort, has to ride in the car with the help, if that is what you want."

At the close of the plaintiff's evidence, defendant offered no evidence, but filed its motion for a directed verdict.

Plaintiff asserts in her brief that the evidence clearly shows assault and false imprisonment. The only fact issue submitted to the jury was whether "* * * a conductor of defendant intentionally prevented plaintiff by intimidation, if so, from entering a chair car with reclining seats." The jury was told that if it found that to be true its verdict should be for the plaintiff. The evidence showed that the Temple car in which she rode did have reclining seats. They merely reclined to a lesser angle than those on the car from Kansas City. The seats were operated by push buttons as in the Kansas City car. Obviously, the evidence failed to show that defendant's conductor prevented her from riding in a car equipped with reclining seats. When pressed for her real objection to riding in the car she testified that: "I was riding in this chair car which had the conductor, and newsstand, and soda water and apples, and oranges, and all that stuff in it. That wasn't a first-class car accommodation back from Temple." Such testimony was no proof of the sole specification of complaint which she had submitted and on which she obtained her verdict, namely, that "the conductor intentionally, by intimidation, prevented her from entering a car with reclining seats." It was error to submit the plaintiff's case on an hypothesis which was not supported by the evidence. Morley v. Prendiville, 316 Mo. 1094, 1103, 295 S.W. 563, 567; Lewis v. Illinois Cent. R. Co., 319 Mo. 233, 240, 3 S.W.2d 371.

We hold that plaintiff failed to make a submissible case and that the court properly set aside the verdict and entered judgment for the defendant on motion. It is not necessary to discuss other points urged by the defendant. The judgment is affirmed.

All concur.