NATIONAL LIFE INSURANCE COMPANY, A CORPORATION, INTERPLEADER, VIRGINIA B. QUISENBERRY, INDIVIDUALLY, AND VIRGINIA QUISENBERRY AS ADMINISTRATRIX OF THE ESTATE OF BRUCE W. QUISENBERRY, DECEASED, AND JACK BLAKE QUISENBERRY, DIXIE QUISENBERRY MAIRE AND WILLIAM ROGERS QUISENBERRY, RESPONDENTS, v. MINNIE M. BLAIR, APPELLANT.—225 SW (2) 806.

Springfield Court of Appeals.   Opinion delivered December 20, 1949.

*A. H. Garner* for appellant.

*Vern. E. Thompson* and *Loyd E. Roberts* for appellee.

BLAIR, J.—This is an interpleader case. An appeal was originally granted to the Supreme Court of the State of Missouri, but, on motion of appellant, the case was transferred to this Court, for want of appellate jurisdiction in the Supreme Court.

The suit was begun on January 20, 1948, by the filing in the Circuit Court of Jasper County, of a pleading by the National Life

Insurance Company, as interpleader, against Virginia B. Quisenberry, et al., as plaintiffs, and Minnie M. Blair, as defendant.

The interplea alleged that on or about July 7, 1926, interpleader issued and delivered to one Bruce W. Quisenberry a policy of life insurance in the sum of $6,000.00, with the right in said Quisenberry to change the beneficiary therein; that the original beneficiary was Virginia B. Quisenberry, the wife, and that, at the request of said Bruce W. Quisenberry, the beneficiary was first changed by interpleader to the executors, administrators, or assigns of said Bruce W. Quisenberry.

The interplea further alleged that, on May 26, 1943, and at the request of insured, the beneficiary in said policy of insurance was again changed by interpleader, at the direction of insured, to "'his friend and benefactor Minnie M. Blair.'"

The interplea further alleged the death of said Bruce W. Quisenberry, the insured in said policy of insurance, on November 22, 1947, and that both Virginia B. Quisenberry and Minnie M. Blair were claiming to be the beneficiary of insured, and that they both demanded payment from interpleader of the proceeds of such insurance policy.

The interplea further alleged that certain persons claimed to have an interest in the proceeds. It is further alleged in the interplea that all persons, other than defendant Minnie M. Blair, were contending that said Bruce W. Quisenberry, at the time of his said requests for changes of beneficiary in said policy of life insurance, was of unsound mind and incapable of understanding or comprehending the nature and consequences of his said act, and that it was claimed that defendant Minnie M. Blair exercised undue influence over the mind of said Bruce W. Quisenberry, at the time he changed the beneficial provision to her.

Said interplea alleged that certain dividends and certain indebtednesses were on the said policy, and alleged the willingness of the interpleader to pay into court the sum of $5,998.60, and asked that all of plaintiffs and the defendant be required by the court to interplead with each other "to determine which is entitled to receive such sum of money," after an allowance of fees to the attorneys of interpleader, attaching to said interplea photostatic copies of what was alleged to have been the policy of insurance, and the assignments of the benefits thereof.

On March 11, 1948, plaintiff Virginia B. Quisenberry filed a petition for herself and as administratrix of the estate of Bruce W. Quisenberry, deceased, and consented that the proceeds of such insurance policy might be paid into court and interpleader be thereafter released, except as to attorneys' fees.

On January 27, 1948, defendant Minnie M. Blair entered her appearance and consented that interpleader might pay the proceeds of such policy into court and be thereafter released.

Plaintiffs Bruce W. Quisenberry, Jr., William Rogers Quisenberry, John Blake Quisenberry and Dixie Quisenberry Maire, filed like consents.

The trial court fixed the time when all the parties might plead and ordered the interpleader, National Life Insurance Company, to pay to the clerk of the court the sum of $5,998.60.

Virginia B. Quisenberry, personally, and as administratrix of the estate of Bruce W. Quisenberry, deceased, and for other alleged claimants, filed therein her petition contending that the sum of $5,998.60, less costs, was due the original beneficiary, under said policy of insurance, and claiming that the premiums on said policy were paid out of joint funds of said Virginia B. Quisenberry and her deceased husband; and alleging that the health of said Bruce W. Quisenberry failed and he became of unsound mind, and that said Bruce W. Quisenberry first attempted to change the beneficiary in his policy of insurance to his executors, administrators or assigns, in the belief that he would thereby exclude his wife.

Mrs. Quisenberry further alleged that, while in such mental condition, Bruce W. Quisenberry caused the beneficiary in said insurance policy to be changed to defendant Minnie M. Blair, on May 26, 1943, by reason of her undue influence over him, because of his mental condition.

The prayer of her petition was as follows:

"WHEREFORE, by reason hereof, the plaintiff prays that said changes of beneficiary be set aside by reason of the matters and things herein in this court fully set out, and that said changes of beneficiary be held for naught, and that plaintiff be found to be entitled to said fund as the only existing and legal beneficiary under said insurance policy."

Plaintiffs Bruce W. Quisenberry, Jr., Jack Blake Quisenberry, Dixie Quisenberry Maire and William Rogers Quisenberry, joined with plaintiff Virginia B. Quisenberry, and the prayer of their petition was as follows:

"WHEREFORE, these plaintiffs, as hereinbefore set forth, pray for judgment as hereinabove set forth, and that they may have a judgment against the defendant Minnie M. Blair for their costs herein had and expended, and for such other and further relief as to them and either of them shall appear to be just and equitable in the premises."

Defendant Minnie M. Blair filed her answer denying, in short, the unsound mental condition of Bruce W. Quisenberry at the time he named her as beneficiary in such policy of insurance, and asserting that she was entitled to the proceeds of such policy, because of such

assignment. She alleged that, when he designated her as beneficiary, said Bruce W. Quisenberry was of sound mind and denied any undue influence over him on her part. She closed her answer with the following prayer:

"WHEREFORE, the Defendant prays judgment against the Plaintiffs and that the court further find that she is the rightful and lawful owner of the said fund deposited with the Clerk of this Court by said interpleader, and that the Clerk be directed to pay to her said sum, and that the costs of this action be taxed against the Plaintiffs, together with all other just and proper relief."

On motion of plaintiff Bruce W. Quisenberry, Jr., his name was stricken out as one of the plaintiffs. The case was tried on May 13, 1948, and, after the evidence was completed, the trial court made the following findings of fact, and conclusions of law:

"Findings of Fact.

"1. That interpleader, the National Life Insurance Company, issued policy No. 489215 on the life of Bruce W. Quisenberry on July 7, 1926, and that Virginia B. Quisenberry, wife of said Bruce W. Quisenberry, was named the beneficiary of said policy.

"2. That on May 26, 1943 Bruce W. Quisenberry made application to said National Life Insurance Company for change of beneficiary to Minnie M. Blair and caused said change of beneficiary to be endorsed on said policy by said company.

"3. That said Bruce W. Quisenberry died on or about November 22, 1947, and that interpleader National Life Insurance Company, upon order of this court, paid into court the sum of $5,998.60, the proceeds of said policy after claims had been filed by Virginia B. Quisenberry, the plaintiff herein, and Minnie M. Blair, the defendant herein.

"4. That about the year 1935 the said Bruce W. Quisenberry became obsessed with the insane delusion that his wife, Virginia B. Quisenberry, was attempting to poison him and that he was suffering from such delusion on February 5, 1942, the date of first attempted change of beneficiary, and on May 26, 1943, the date of second attempted change of beneficiary, and that such delusion continued until the date of his death.

"Conclusions of Law

"1. That, by reason of the insane delusion as to his wife, Virginia B. Quisenberry, the said Bruce W. Quisenberry was incapable of understanding the consequences of his act in changing the beneficiary of his life insurance policy either to his estate or to Minnie M. Blair, and incapable under the law of changing said beneficiary, and that said attempted change of beneficiary was void and of no effect.

"2. That the said Virginia B. Quisenberry is the beneficiary, under the law, of said insurance policy and is entitled to the proceeds thereof.

"3. That judgment should be entered in favor of the plaintiff, Virginia B. Quisenberry, for the amount of the proceeds of said insurance policy, less the attorney fee heretofore allowed to interpleader and less the costs of this case."

After such findings of fact and conclusions of law, the trial court entered a judgment in favor of plaintiff Virginia B. Quisenberry, and against all of the other parties, and provided for the payment to interpleader of the sum of $250.00, as fees for its attorneys.

Defendant Minnie M. Blair, did not succeed in overturning such judgment by her motion for a new trial, and has appealed.

Appellant has made a number of assignments of error by the trial court; but the real question in this case is whether or not the trial court was justified by the evidence in finding that Bruce W. Quisenberry was mentally incompetent at the time he undertook to change the beneficiary in his insurance policy to defendant Minnie M. Blair.

There are other assignments of alleged error in admitting certain testimony, which had a bearing or purported bearing, upon the mental condition of Bruce W. Quisenberry at the time he changed the beneficiary in his policy of insurance to defendant Minnie M. Blair.

There cannot be the slightest question about the right of Bruce W. Quisenberry to change the beneficiary in his insurance policy to defendant Minnie M. Blair, if he so wished to do. He could make such change at any time he directed the change of beneficiary to be made, if he was then mentally capable of so doing. The policy provided for a change of beneficiary and he could make this change with or without reason therefor, provided only that he knew what he was doing, at the time that he directed such change to be made.

Much space in the transcript is occupied with letters, both from Bruce W. Quisenberry to his wife and others from her to him, which she testified that she found among his things when she was appointed as admistratrix of his estate. We do not think it necessary to lengthen this opinion by setting out those letters, notwithstanding the fact that they are set out in full in the transcript, and tended to show his feelings toward his wife at the time his letters were written.

Not only did appellant object to admission of those letters, but she took the ground that respondent, Virginia B. Quisenberry, herself, was not a competent witness in the case. The most of appellant's assignments of alleged error are directed to the admission in evidence of such letters and the use of Mrs. Quisenberry as a witness. Time and again appellant made objections of that sort and it was finally agreed that the same objections might be considered as being made to each question.

Many of appellant's assignments of alleged error are unaccompanied with cases purporting to support such assignments. We will notice only two of such assignments of alleged error. In her brief appellant says:

"The judgment in the case is based upon incompetent testimony, and Mrs. Quisenberry and other witnesses in the case were permitted to testify in violation of the rules of evidence over the objection of the defendant and in violation of rules set forth in Sec. 1887, Mo. R. S. A., 1939, and that all of said testimony was in violation of this rule, or was so far remote from the dates affecting the merits of the suit were incompetent."

The first case appellant cites in supposed support of that assignment, is New York Life Insurance Company v. Wright, 88 S. W. (2d) 403, l. c. 407. In that case Judge Bland, of the Kansas City Court of Appeals, held that, notwithstanding proof that the insured had been of unsound mind at times, there was no proof that he was of unsound mind at the time he directed the change as to the beneficiary first named in his insurance policy, though he was very ill at that time. Judge Bland said: 

"There is no claim that insured suffered any mental incapacity as a result of anything but his illness, the claim being based entirely upon the condition of his sickness."

Also, on the same page, Judge Bland said:

"We have been unable to find from the hospital records that he was irrational, insane or out of his mind near the time when he executed the request for the change of beneficiaries."

And again in the same volume and at the same page, Judge Bland said:

"Without passing upon the propriety of these questions but giving them the weight that they otherwise merit and taking the evidence as a whole, we are not prepared to say that the evidence discloses that insured was insane at the time he executed the request for the change of beneficiaries."

In the same volume and at the same page, Judge Bland said, that not even the trial judge had held that insured was of unsound mind at the time he made the change.

The case above discussed was apparently reversed and remanded solely because the claimants had not sustained the burden cast upon them by the law of showing that the insured was of unsound mind when he directed the change of beneficiary, and Judge Bland did not discuss the competency of the various witnesses at all.

Appellant cites Farrister v. Sullivan, 132 S. W. 722, also found by us in 231 Mo. 345. Paragraphs 5 and 6 of the syllabus, as reported in the Southwestern Reporter, lay down the rule that an interested person becomes an incompetent witness upon the death of the other party. This is not exactly held in the opinion itself. The statement in

the syllabus was possibly authorized by what Judge Lamm said in his opinion, as follows:

"It is assigned for error that plaintiff was excluded as a witness. He was offered in chief, presumably to prove the contract and performance. He was competent to prove neither."

"The fact that decedent paid all the taxes and on his deathbed expressed a desire that Feester, tenant on his home place, and Forrister, tenant on the Stewart place, should remain and pay rent to his widow, taken with all other facts and circumstances, convinces us the decree below did equity."

To this point, appellant also cites Bishop v. Brittain Inv. Co., 129 S. W. 668. While plaintiff in that case was held to be an incompetent witness, her rights depended *entirely* on a contract of common-law marriage with deceased, which she alleged.

Appellant has cited a large number of cases on this point; but, if they are of no more controlling value than the cases referred to by us, there is no necessity of our discussing any of them. Under Rule 1.08 (a), (3), of the Supreme Court, we are fully justified in thinking that appellant has cited her strongest three cases first.

Under paragraph (1) (B), somewhat to the same effect, but mostly on the issue of the soundness of mind of Mr. Quisenberry, at the time of the last change in beneficiary, appellant cites fifteen cases, including the case in the 88 S. W. (2d), above discussed. She also cites Adams, et al. v. Simpson, 213 S. W. (2d) 908. That was an opinion by Conkling, Judge of the Supreme Court of Missouri. That case merely held that the evidence must show the condition of testator's mind at the very time that he executed the will, and that his mental condition was not established by evidence as to such mental condition before or after he executed the will. That case does not discuss the competency of the witnesses, and does not purport to do so.

Under this point appellant next cites Ahmann v. Elmore, 211 S. W. (2d) 480. That case does nothing more than to hold that there was not sufficient evidence to prove that testator was not capable of making a will *at the time* he made such will.

Under the Supreme Court Rule above referred to, it is not necessary to discuss other cases cited on this point, in appellant's brief.

Under points 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16 and 17, in appellant's brief, she has simply "rung the changes" on the propositions above discussed.

It is scarcely necessary anyway to note the many cases cited to show the alleged incompetency as a witness of plaintiff Virginia B. Quisenberry, even if she was not a competent witness. Defendant Minnie M. Blair clearly waived any reliance on that point, by taking the deposition of Mrs. Quisenberry before the trial.

Lampe v. Franklin American Trust Co. et al., 96 S. W. (2d) 710, 339 Mo. 361; Morley v. Prendiville, 295 S. W. 563, 316 Mo.

1094; Trautmann v. Trautmann, 254 S. W. 286, 300 Mo. 314; Hodge v. St. Louis Union Trust Co. 261 S. W. 67, (Mo.).

Appellant called a great many witnesses to prove that Bruce W. Quisenberry, for a number of years, transacted business and discussed current events, like other persons. Some of these witnesses were connected in a business way with appellant; some of them had places of business near to her place of business. None of them had seen Quisenberry when he was emotionally upset, and most of them had not heard him mention his wife at all, at least not to discuss his suspicion of her.

The petition of Mrs. Quisenberry alleged that appellant unduly influenced Bruce W. Quisenberry in making the change of beneficiary to her. Appellant denied the exercise of such undue influence, and the testimony does not show it. She was friendly to him, and he used her apartment without paying rental therefor, for a long time, and he kept her books and made change with her customers. She admitted that she took care of him shortly before he died. There is no showing of any further influence over him by her.

However, we do not think the exercise of undue influence on her part necessarily has to be shown. This is an equity case and, while we are not bound by the judgment of the chancellor, still he had an enormous advantage over us in that he saw and heard the various witnesses. (Section 114 (d), Laws of Missouri, for 1943, page 388.) Since the testimony is not clearly against the findings of the trial judge, it is our duty to approve such findings.

The trial judge had the right to believe the expert testimony of Dr. G. Wilse Robinson and of Dr. J. R. Kuhn, when they testified that one could be insane on one subject and sane on all others, and the testimony of many lay witnesses, who lived close to Quisenberry and his wife, when they tried to pacify him after he told them of his suspicions of his wife.

Appellant offered no expert testimony to the contrary, and no testimony of any witness, who had known Quisenberry before he left his wife, or at least none who knew of his relations with his wife before he left her. True, a multitude of witnesses testified to their frequent, if not daily, contact with Quisenberry. Almost without exception, their testimony fitted in exactly with the expert testimony of Doctors Robinson and Kuhn, that a paranoiac could be insane on one subject and apparently normal on others.

From a sensible viewpoint, the trial chancellor was correct in his holding that Quisenberry was the victim of that form of insanity called paranoia. Respondent and her husband had lived together for nearly forty years and had raised a family of four children. When Quisenberry discovered that he was the victim of an incurable disease, he suddenly conceived the notion, without reason therefor, if respondent's evidence is credible, that his wife of many years was

his worst enemy, and that she was trying to kill him with poison, so she could get the benefit of his insurance. He refused to eat anything into which she could have introduced poison; he refused to eat at all with the family, consisting of his wife and children, whom they had jointly raised. He accused his wife of persecution and of attempting to kill him. He had suffered much financial loss, which greatly humiliated him. His course in changing his beneficiary to another woman, though possibly guiltless herself, finds no support in human experience.

The trial judge was fully justified, if he did, in believing the many witnesses of appellant, and finding therefrom that, in the ordinary affairs of life, Mr. Quisenberry showed no signs of his unfounded suspicion of his wife, and persecution by her, and possibly death at her hands. The trial judge believed that, while Quisenberry was perfectly sane on most subjects, he was a paranoiac and absolutely insane in thinking that his wife was persecuting him and trying to get rid of him by poison.

This has been a very interesting case from many viewpoints; but we feel that the trial judge was fully justified in accepting the testimony of experts, and of the close neighbors, who knew Quisenberry best, and in rendering the sort of judgment that he did, and we think that we should approve his conclusions.

The judgment is affirmed. *Vandeventer, P. J.* and *McDowell, J.* concur.