REBECCA S. MANLEY, ADMINISTRATRIX D. B. N. C. T. A. OF THE ESTATE OF FRANK A. BELLOWS, DECEASED (PLAINTIFF) RESPONDENT, v. MRS. MARION HENSIEK RYAN, DEFENDANT APPELLANT.—126 S. W. (2d) 909.

St. Louis Court of Appeals. Opinion filed April 4, 1939.

*Alex R. A. Garesche* and *James V. Frank* for appellant.

*Thomas B. Curtis* for respondent.

HOSTETTER, P. J.—This suit was instituted in the Circuit Court of the City of St. Louis on the 24th day of August, 1936, by Rebecca S. Manley, administratrix d. b. n. c. t. a. of the estate of Frank A. Bellows, deceased, against defendant, Mrs. Marion Hensiek Ryan for conversion.

The petition set out in substance that plaintiff was the duly appointed and acting administratrix d. b. n. c. t. a. of the estate of Frank A. Bellows, deceased; that in December, 1929, Clara C. Bellows, second wife of Frank A. Bellows, died intestate and her niece, Marion Hensiek, now Mrs. George F. Ryan, the defendant in this action, was duly appointed administratrix of her estate and qualified and served as such; that among other things she received and inventoried as assets of said estate were two solitaire diamond rings appraised at $1200; that Dr. Frank A. Bellows was the husband and heir of Clara C. Bellows and entitled to the diamond rings so inventoried; that the estate of Clara C. Bellows remained open and undistributed for several years and while in this condition Dr. Bellows died, apparently intestate, on August 25, 1932; that Dr. Bellows had been duly adjudicated insane on February 1, 1932, at which time Anton Schuler, public administrator, was made guardian of his person and estate; that in June, 1933, the last will and testament of Dr. Bellows, which had been executed on September 15, 1931, was found and submitted to Anton Schuler; that on September 18, 1933, the will was duly admitted to probate and Walter F. Sheehan, then public administrator of St. Louis was appointed administrator when the Mercantile Commerce Bank and Trust Company, the executor named in the will, declined to act; that plaintiff was named sole and residuary legatee except for a one dollar bequest to Addie S. Thornthwaite, the doctor's daughter by his first wife; that on or about June 13, 1933, the defendant, Marion Hensiek Ryan, knowing of the doctor's death nine months before, and without the scope of her duties as the administratrix of the estate of Clara C. Bellows, sent the two diamonds, which rightfully belonged to Dr. Frank A. Bellows, to Addie Sarah Thornthwaite; that as administratix and sole beneficiary of Dr. Bellows, plaintiff is rightfully entitled to said diamonds and all other assets of Dr. Bellows' estate; that she has made demand for these diamonds on the defendant, and defendant has failed to turn them over to her; that she has been unable to obtain them from Addie Sarah Thornthwaite without great expense; that the last known address of said Addie Thornthwaite was somewhere in Alaska where plaintiff presumes the two diamonds were

sent; that because of defendant's wrongful act of turning over the diamonds to an improper person instead of to the administratrix of Dr. Bellows' estate, who is the proper person, the estate of Dr. Bellows has been deprived of the value of these diamonds for three years and has been kept open at some cost, caused by defendant's wrongful act; that, therefore, plaintiff, as administratrix of Dr. Frank A. Bellows' estate, prays judgment against the defendant in the sum of $2500 and costs.

The answer was a general denial.

The case was heard by the trial judge without the intervention of a jury.

There was considerable testimony, particularly that given on behalf of the defendant, which was objected to by the opposing party, but the trial court did not rule on many of the objections, but heard the case through and decided the issue in favor of the plaintiff.

The facts set out in the plaintiff's petition were generally speaking supported by the files of the probate court and the oral testimony.

The facts are substantially as follows:

In December, 1929, Clara C. Bellows died intestate, leaving surviving her, a husband, Frank A. Bellows, a niece, Marion Hensiek (later, by marriage, Marion Hensiek Ryan), and a sister living in South Dakota, and, shortly thereafter, her said niece was appointed administratrix of her estate. Among the assets of the estate were two solitaire diamond rings which were inventoried at a value of $1200. It was shown that on December 29, 1930, a reclamation suit was filed by Dr. Frank A. Bellows, the surviving husband, claiming the two solitaire diamond rings on the ground that he had furnished the money which paid for them, and said rings were awarded to him by order of the probate court, although they remained in the possession of the administratrix.

It was shown that Dr. Frank A. Bellows was a dentist by occupation; had been twice married and became the father of Mrs. Addie Sarah Thornthwaite, who resided in Alaska and was a daughter by his first marriage. In the later years of his life Dr. Bellows practically became a dipsomaniac and, shortly prior to his second wife's death, he shot her in the leg and she died as a result of infection of this wound. He was arrested and kept under surveillance for sometime. Whether he shot her accidentally or on purpose was the question which was in doubt.

On February 1, 1932, Dr. Frank A. Bellows was declared insane by action of the probate court, and his affairs were put into the hands of public administrator, Anton Schuler. On August 25, 1932, Dr. Bellows died, apparently intestate, and, on August 26, 1932, Anton Schuler, the said administrator in charge of Dr. Bellows' affairs, was appointed administrator of his estate by the probate court.

On or about June 13, 1933, Mrs. Marion Hensiek Ryan, administratrix of the estate of Clara C. Bellows, filed her report showing disbursement of the two diamond rings to Addie Sarah Thornthwaite, and a receipt for the two diamond rings was filed, and the probate court approved this disbursement.

On June 23, 1933, an instrument, executed on September 15, 1931, purporting to be the last will and testament of Dr. Frank A. Bellows, was filed in the probate court of the city of St. Louis and was duly admitted to probate on September 18, 1933. In said will Rebecca S. Manley was named as the sole and residuary legatee except for a one dollar bequest to the surviving daughter Addie Sarah Thornthwaite.

Thereafter, Rebecca S. Manley was duly appointed and qualified as administratrix d. b. n. c. t. a. of the estate of Frank A. Bellows, deceased, and in such capacity instituted this suit for conversion against Mrs. Marion Hensiek Ryan in her individual capacity.

The plaintiff, Mrs. Rebecca S. Manley, testified that she was no blood kin to Dr. Bellows, deceased; that she first knew him about 1915; that when he was first locked out of his home he came to her house about July 25, 1931, and sat on her porch; that she had befriended him and given him dimes at times and also some clothing and he stayed in her home until about December 19, 1931; that the will was dated December 15, 1931, and was made during the time that he stayed at her home; that he was declared insane on February 1, 1932, and after that he went to Dayton, Ohio, and died there; that the doctor's age was 58 at the time he died.

Plaintiff further testified that on June 6, 1933, she was cleaning out an old wardrobe that the doctor used when he stayed at her home and that she found the will in the bottom of the drawer; that the Mercantile Trust Company was named as executor and that she showed it to them on the following day after she found it and that they did not want to act because the estate was too small; that she then went to A. P. Kaufmann and he said it was a good will, but that there were no assets; that she then went to Mr. Montgomery and he said there was nothing to the estate but a $1400 check and that Bert Fenn had a $1000 fee against that, and that she said, "There's a lot more to the estate than that;" that on advice she took the will to the public administrator and that she showed it to Mr. Sheehan and that he told her it was a good will and told her to come back in ten days with $20 to file it and that she went home and waited the ten days and Mr. Sheehan kept the will in his possession; that she made demand on the defendant, Mrs. Ryan, through her attorneys several times; that Mrs. Thornthwaite, who finally got the diamonds was the doctor's daughter by a previous marriage.

On cross examination she testified that her husband sold a little whiskey during 1931; that he kept whiskey and Dr. Bellows bought

a little from him, but that the doctor also bought from Tony's down on the corner; that she understood the doctor was a drinking man, but personally she had never seen him drink, although he stayed in her home for a good many weeks; that she had nothing to do with the making of the will and did not see Dr. Bellows sign it; that he told her that his daughter had more money than she knew what to do with and gave up her right to everything here; that she herself had never seen the rings.

Defendant, Mrs. Marion Hensiek Ryan, testified in her direct examination that she was married to George F. Ryan on October 13, 1933; that Clara C. Bellows was her aunt, her mother's sister; that her aunt's husband, Dr. Frank A. Bellows, was no blood kin to her; that she was appointed administratrix of the estate of Clara C. Bellows and was represented by an attorney in handling her estate; that the two solitaire diamond rings were inventoried as a part of the estate of Clara C. Bellows; that on numerous occasions she talked with Dr. Bellows about the diamonds, and, each time he mentioned them, he told her that at his death, not necessarily his death, but that he wanted her to take her pick of the two diamonds and to send the other one to his daughter, Addie S. Thornthwaite.

At this stage plaintiff's counsel objected to the testimony on the ground of irrelevancy and the further ground that she could not testify to such matters based on her conversation with, and statements of, a man now dead, she being a party to it and it being to her own interest, and the court overruled the objection, to which exceptions were saved.

. Defendant further testified on direct examination that after these conversations one of the diamonds belonged to her and the other one belonged to his daughter; that he had specifically directed her to send the other one to his daughter; that Mr. Ryan, to whom she was later married, was present when some of these conversations with reference to the gift took place; that she didn't keep the diamond that Dr. Bellows had given to her because she felt that there wasn't much involved and that the daughter was more entitled to it than she was, so, she sent both to her, and that what she did was approved by an order of the probate court.

Witness was here shown, by her attorney, defendant's exhibit 1, and she identified it and it was read in evidence, being a letter, reading as follows:

"Whitehorse, Yukon Territory
28th June, 1933.

"E. H. Schwarzenbach
"At. Louis, Mo.
"Dear Sir:—

"On behalf of my wife, I beg to acknowledge receipt of your letter together with Diamond rings valued at $750.00 and shipped per Railway Express Company and received this date.

"I enclose herewith Bank Money order for the amount of $3.05 being a refund for the amount expended by you on express charges. "Thanking you for your courtesy in this matter,

"I am, yours truly,

"(Sgd)    Corp. H. B. Thornthwaite,
"Corporal A. B. Thornthwaite,
"R. C. M. Police.''

Defendant further testified on direct examination that she knew Dr. Bellows' habits prior to the time he was adjudged an insane person and several times he was sober and other times he was not; that he shot his wife and that she died as a result of the wound he inflicted; that in these conversations with Dr. Bellows he said that he did not feel that his wife's relatives were entitled to the rings; that he bought the rings for "Aunt Clara" as a gift to her and he didn't see why her heirs should come in for what little was left of the estate; that he was giving the diamonds either to her or his daughter; that he didn't want her (Mrs. Bellows') relatives other than herself to share in anything; that at the time the accident (shooting of his wife) occurred, she (witness) went down to his home with Mr. Ryan immediately thereafter; that this occurred before her marriage to Mr. Ryan; that the police were there and arrested him and took him to jail and that she and Mr. Ryan got his clothes from his house and took them back to the jail for him; that she didn't know what happened, but he was not held liable; that she and Mr. Ryan were of assistance in straightening out the criminal prosecution for the shooting of her aunt; that she didn't know whether the shooting was accidental or on purpose and that Dr. Bellows expressed very much appreciation to them for their assistance; that Dr. Bellows was sober when he expressed his desire to give her the choice of the two rings and then send the remaining one to his daughter in Alaska.

In answer to her counsel's question as to whether she could throw any further light on the extent the doctor was a drunkard or a dipsomaniac she answered as follows:  "Well, as long as I remember, he was.  I remember as a child that half the time he wasn't there tending to business."

Counsel for plaintiff here reminded the court that, of course, he was objecting to this testimony and counsel for defendant suggested that it was a matter of judicial notice that the country was dry when the will was made in 1931 and liquor could be obtained only through bootleg sources.

Defendant's cross examination was as follows:

"Q.  If as you say, this story of this supposed gift is true, why did you get the approval of the probate court to send the diamonds to Sarah Thornthwaite?  A.  Well, throughout the whole procedure I had an attorney representing me and I did exactly what he told me to do.

"Q. Doesn't it seem strange if the diamonds were a gift that you should get the approval of the court to do that? (No answer by the witness.)

"MR. CURTIS: That's all."

On her redirect examination she testified that she did only what her attorney told her to do; that she didn't understand fully what an inventory meant or probate court procedure; that after the order was made approving the reclamation petition that Dr. Bellows did not make any further efforts to get the rings from her; that after he had filed this reclamation suit he told her that he didn't want his wife's relatives to have anything and that he would spend every dime he had to keep them from getting any of it.

Defendant's testimony on recross examination was as follows:

"Q. Why did you suddenly decide to send the diamonds away in June of 1933, just at the time this will was filed? A. Well, I believe my lawyer was instructed by the court to do it.

"Q. I understand, but usually that action is taken on your own initiative—your attorney's. Why, of all times, did you choose about three or four days before the will was filed to send the diamonds away, when it might have been done months ahead of them? A. We didn't know there was a will.

"Q. I understand, but I am asking you why you chose June of 1933, of all times, to suddenly decide to— A. I don't think the date has anything to do with it. My attorney did what the probate court told him to do.

"Q. You just suddenly decided to send them away in June for no reason at all. It just happened to be June rather than any other day? A. Probably so."

George F. Ryan testified that he married defendant on November 13, 1933; that he had been going with her since 1927 and that they were both working at the time of the marriage; that he knew Dr. Bellows but did not know Mrs. Bellows; that he had heard his wife's testimony and that it was substantially correct; that he was present at the conversations between his wife and Dr. Bellows at least six or seven times; that Dr. Bellows talk always was that she was the favorite niece of Mrs. Bellows and that he wanted her and his daughter by a previous marriage to have the two diamonds and that he heard the doctor say to his (witness') wife: "You take your pick and send the other one to Addie;" that he and his wife had done a great deal for Dr. Bellows; that, of course, they couldn't do much for him when he was drinking; that he was very much of a drinking man.

Andrew Adank, a diamond broker, of thirty years business experience in St. Louis, was called by defendant, and testified, without objection, that he was familiar with the diamond market generally, and that in 1930 the diamond market was then at its peak, the highest he had ever known, and that in the years 1932, 1933 and 1934 the

market for diamonds was the lowest he had ever seen; a difference of fifty per cent.

We are of the opinion, under all the facts developed by the testimony, that the action of the learned trial judge in finding the issues for the plaintiff administratrix was proper.

In the first place, it clearly appears that although the two rings were inventoried as belonging to the estate of Clara C. Bellows, yet, upon a hearing of the testimony in the reclamation suit instituted by Dr. Bellows in the probate court, wherein he claimed the rings as his property, the probate court sustained his claim as the owner of the rings and entered judgment accordingly. By that action of the probate court the rings ceased to be a part of the assets of the estate of Clara C. Bellows, and, no appeal being taken from such adjudication of the probate court, it follows that when that court approved the settlement of the defendant as administratrix, showing the fact that she had sent the rings to Mrs. Thornthwaite, Dr. Bellows' daughter, it was without jurisdiction to validate her act, because the rings were not a part of the estate. This order was made after many terms of court had passed since the probate court had adjudicated the rings to belong to Dr. Bellows. Its order, therefore, giving its approval to the act of the defendant in turning the rings over to Dr. Bellows' daughter did not add to the validity of such transfer by the administratrix of the Clara C. Bellows' estate. [Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 293 S. W. 116, l. c. 118.] If defendant administratrix had any authority to turn the rings over to Dr. Bellows' daughter it must be based on the alleged gift of the rings to her by Dr. Bellows. There are two reasons why the alleged gift might not be available to justify her in turning the rings over to Dr. Bellows' daughter.

First, the fact that the answer was only a general denial. Section 776, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 776, p. 1015) provides, *inter alia*, that the answer of the defendant shall contain: "a statement of any new matter constituting a defense or counterclaim, in ordinary and concise language, without repetition." The defense of a gift was new matter and should have been pleaded in order to have made such defense available. [Northrup v. Miss. Valley Ins. Co., 47 Mo. 435, 4 Am. Rep. 337; Kersey v. Garton, 77 Mo. 645, 16 Cent. Law J. 472; Hudson v. Wabash Western R. Co., 101 Mo. 13, 14 S. W. 15; Newham v. Kenton, 79 Mo. 382.]

The first case cited by counsel for defendant in support of their contention that it was unnecessary that the gift be affirmatively pleaded in the answer, is Blatz v. Lester, 54 Mo. App. 283, which illustrates the method by which new matter which must be pleaded in the answer may be distinguished from matter which may be covered by a general denial.

In the Blatz case plaintiff sued on account for the purchase price of certain chattels alleged to have been sold and delivered to defendant. The answer was a general denial. Under this answer defendant was permitted to give evidence that the chattels were a gift from plaintiff to defendant. The court upheld defendant's right to do so, using the following language in support of its ruling:

"The answer need only set up new matter; and an allegation of the gift of chattels which are charged in the petition to have been sold is not new matter. Proof of a gift is one mode, and a legitimate mode, of disproving the allegation of a sale. It does not confess a sale and avoid it by some supervening fact, but its effect is to deny the sale. Such proof supports a general denial. Judge BLACK says in State ex rel. v. Rau, 93 Mo. 130, that, if the facts stated in the answer show a nonliability, though the facts stated in the petition are true, then they are new matter. But, if the facts stated in the answer simply show that the facts stated in the petition are not true, then they are not new matter, though stated in an affirmative form, and need not have been specially set out; as a general denial would have sufficed to let them in evidence."

In the instant case, proof of a gift of the rings by Dr. Bellows to defendant did not affect the truth of the matters set up in the petition, hence, in accord with the reasoning employed in the Blatz case, *supra*, the gift was new matter and should have been pleaded in the answer.

Second, we are of the opinion that defendant was not a competent witness to testify to the alleged gift, in that the alleged donor was dead. Section 1723, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 1723, p. 3994) contains, *inter alia*, the following, viz.:

"No person shall be disqualified as a witness in a civil suit    .    .    . by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility: Provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead    .    .    . the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him    .    .    ."

[Scott v. Riley, 49 Mo. App. 251; Tomlinson v. Ellison, 104 Mo. 105, 16 S. W. 201.] This tends to weaken the testimony in support of the gift, so that even if it be regarded as a proper defense under the state of the pleadings, it would have to stand proven, if at all, solely by the testimony of witness George F. Ryan, who thereafter married the defendant. It is a general rule that a gift, *inter vivos*, sought to be established after the alleged donor's death, must be proven by forceful, clear and conclusive testimony which convinces the court beyond a reasonable doubt of its truthfulness. [Albrecht v. Slater (Mo.), 233 S. W. 8, and cases therein cited; Lohnes v. Baker, 156 Mo. App. 397, 137 S. W. 282; Martin v. First National Bank, 206

Mo. App. 629, 227 S. W. 656; Spencer v. Vance, 57 Mo. 427; In re Soulard Estate, 141 Mo. 642, 43 S. W. 617; Jones v. Falls, 101 Mo. App. 536, 73 S. W. 903; Reynolds v. Hanson (Mo. App.), 191 S. W. 1030; McCune v. Daniels (Mo. App.), 225 S. W. 1020.]

The verdict of the trial judge carries much weight with reviewing courts. He sees the witnesses and observes their demeanor on the witness stand, and, in this instance, did not find that the proof of the alleged gift was convincing, hence, under the rule, we are required to, and do, approve his conclusion.

Complaint is made by counsel for defendant, that plaintiff's suit was prematurely brought against defendant in her individual capacity; that the estate of Clara C. Bellows was closed by an order of "no further process" and that there was no advertising of the intent of the administratrix to make a final settlement as provided by Section 230, Revised Statutes Missouri, 1929, and that, therefore, plaintiff "should have gone into the probate court and requested that court to set aside the order of no further process, and should there have applied for whatever relief, *if any*, plaintiff below may have been entitled to in that court, prior to the institution of this suit." (Italics ours.)

There is a well known maxim that the law does not require the doing of a vain and useless thing. Counsel for defendant failed to point out any relief which plaintiff might have obtained had she followed the course thus mapped out for her. It was suggested in the oral argument that she might have had the defendant held to be in contempt by the probate court. Such a proceeding would have proven as profitless and as provocative as the barren fig tree featured in St. Matthew 21:19. The record shows that the diamond rings were shipped to Alaska in June, 1933, about the time the will of Dr. Bellows was filed in the probate court and about three months before it was admitted to probate. Besides, the probate court had, long prior thereto, adjudicated that the diamond rings belonged to Dr. Bellows and did not constitute any part of the assets of Clara C. Bellows' estate, consequently, it had no jurisdiction to afford any relief to the plaintiff administratrix had she followed the course suggested by defendant's counsel. After such adjudication became fixed and final defendant's bondsmen ceased to have any liability on account of her mishandling the diamonds, because they were no part of the assets of the estate of Clara C. Bellows. We rule this contention of defendant's counsel to be without merit.

Counsel for defendant strenuously urge that the verdict and judgment for $1200 are excessive. This is one of the grounds in their motion for a new trial. We think there is merit in this contention. The inventory of the Clara C. Bellows' estate discloses that the three appraisers fixed the value of the diamond rings at $1200. This inventory was sworn to by defendant on April 4, 1930, and was filed in the probate court on April 12, 1930. In view of the testimony of witness

Andrew Adank, hereinbefore set out, we have reached the conclusion that the verdict and judgment are excessive in the amount of $400.

Therefore, if the plaintiff shall file in this court within ten days, a *remittitur* of the sum of $400, together with all interest thereon, the judgment of the trial court will be affirmed for $800 with interest thereon and costs, as of the date of December 15, 1937. In the event plaintiff fails to file such *remittitur* within the time designated, the judgment of the trial court will be reversed and the cause remanded for a new trial. *Becker* and *McCullen, JJ.*, concur.