**Gerald L. BISHOP, Plaintiff-Respondent,**

v.

**Ray GOLDSCHMIDT, d/b/a Goldie's Ticket Agency, Robert Ingham and Walter Weir, Jr., Party Defendant, Defendants,**

**Ray Goldschmidt, d/b/a Goldie's Ticket Agency and Robert Ingham, Defendants-Appellants.**

**No. 32950.**

St. Louis Court of Appeals.

Missouri.

Nov. 19, 1968.

Motion for Rehearing or Transfer to the Supreme Court Denied Dec. 18, 1968.

Application to Transfer Denied Feb. 10, 1969.

McLeod & Murphy, William R. Murphy, St. Louis, for defendants-appellants.

Hinkel & Carey, Clifford L. Goetz, W. Scott Pollard, St. Louis, for plaintiff-respondent.

ANDERSON, Presiding Judge.

Plaintiff, Gerald Bishop, brought this action against Ray Goldschmidt and Robert Ingham seeking a recovery of $4,104.69 actual and $10,000.00 punitive damages. Walter Weir, Jr., plaintiff's partner in the joint venture out of which this action arose, and who refused to join in the suit, was made a party under Civil Rule 52.04, V.A. M.R. The action was to recover money alleged to be wrongfully withheld by defendants from Bishop and Weir with a prayer for punitive damages. The trial resulted in a verdict against defendants, Goldschmidt and Ingham, for $2,000.00 actual damages. From the judgment entered on said verdict, said defendants have appealed.

The first point urged on this appeal is that the trial court erred in refusing to direct a verdict for defendants for the reason that there was no substantial evi-

dence to support a verdict against either defendant. This necessitates a review of the evidence in the light most favorable to plaintiff.

Gerald L. Bishop and Walter Weir, Jr., entered into a contract with MCA TV, LTD. for a closed circuit telecast showing at the Kiel Auditorium in St. Louis of the 1964 Indianapolis 500 Auto Race. This contract was dated March 26, 1964. Mr. Bishop, at the time, lived in Indianapolis; and Mr. Weir resided in Webster Groves, Missouri. They were partners in this venture sharing fifty-fifty in the deal, with Mr. Weir handling the money.

After signing the contract with MCA TV, LTD., Mr. Bishop came to St. Louis and the two of them engaged a Mr. Green to handle the matter of publicity with reference to the venture. However, Mr. Green did not continue to represent them. Mr. Weir then contacted Mr. Bishop with reference to the matter. Mr. Weir was a witness for defendant, and his testimony with respect to this appears in the transcript as follows: "A. I contacted Mr. Bishop and told him Mr. Green knew nothing about automobile racing and he was not the man to put on it; that there was a Mr. Ingham over in St. Louis with KSD-TV who would do a good job on the promotion of the closed circuit event, and was well acquainted with automobile racing. Q. Did Mr. Bishop agree to that? A. He and I agreed to it; yes, sir. Q. What did you do thereafter, Mr. Weir? A. Met Mr. Ingham and Mr. Goldschmidt at the Clayton Inn to make arrangements to handle ticket sales and publicity for us. Q. Did you thereafter hire them? A. Yes, sir, at the same time. * * * Q. Did you discuss costs and budget at that meeting? A. Along general lines. As I recall it, their services were $250.00 a week, plus whatever advertising, television, that they had to entail through the publicity of this event. Q. By the way, when did this meeting take place; do you recall? A. I don't. But probably in the early part of April."

As a part of plaintiff's case, portions of a deposition of Mr. Goldschmidt taken September 30, 1965, were read into evidence. The part material to the issues on this appeal are as follows: "Q. Do you do business as Goldie's Agency? A. Yes * * * at M-6 Arcade Building. Q. What is the nature of the business that you do there under that name? A. Well, Goldie's Ticket Agency would be the ticket end of it and Goldie's Agency was with Bob Ingham on the publicity. * * * Q. Prior to the holding of the Indianapolis 500 race showing here in St. Louis did you and Mr. Ingham enter into an agreement or an arrangement with Mr. Bishop and Mr. Weir to handle the publicity for the showing of the Indianapolis 500 race pictures? A. Not with Mr. Bishop. We only talked with Mr. Weir. Q. And then you finally came to an agreement to how the publicity would be handled, did you not. A. Yes, at that time. Q. I would like to return at this time to a statement that you made to me to the effect that you and Mr. Ingham were working together in publicity as Goldie's Agency. A. Publicity; yes. Q. This was a joint enterprise on your part, that is, you and Mr. Ingham, in connection with the publicity in this matter, am I right? A. Yes, sir."

The plaintiff's petition alleged that he and Walter Weir, Jr., entered into an agreement with defendants, Ray Goldschmidt and Robert Ingham whereby said defendants were to handle the advertising and promotion of the closed circuit TV showing of the Indianapolis race; that under the agreement defendants were to obtain advertising and promotion of the race in various news media and handle the sale of tickets. These allegations were admitted in defendants' answer.

The contract between Bishop & Weir and MCA TV, LTD. limited the issuance of complimentary tickets to ten. Mr. Bishop testified that he advised Mr. Goldschmidt of this limitation prior to the start of the publicity and advised him that they would

have to pay for any free tickets in excess of ten. Later, MCA TV, LTD. agreed to allow fifty complimentary tickets.

After the race, Mr. Goldschmidt forwarded to Mr. Weir a statement listing the expenses incurred in connection with the TV showing. There was a notation thereon that all items were subject to adjustments for errors. He also furnished invoices allegedly representing the expenditures listed on said statement. A number of these invoices were for services not performed in connection with the TV showing, and in some the amounts stated therein were incorrect. The overcharges on the items listed and the sums charged for services not rendered amounted to $1,153.21. There was a refund of $420.85 to Mr. Weir leaving a balance due on the above listed items of $732.36. A statement furnished by Mr. Goldschmidt relative to the tickets sold showed that one hundred fifty-seven (157) $6.00 complimentary tickets and four hundred sixteen (416) $5.00 complimentary tickets had been issued. It was stipulated that the evidence showed there was due for alleged issuance of excessive complimentary tickets the amount of $1,273.42. Therefore under the evidence a jury could find there was due to plaintiff & Weir the total sum of $2,005.78.

It is urged that the motion for a directed verdict should have been sustained as to defendant Ingham for the reason that since the evidence failed to show a partnership between Ingham and Goldschmidt, Ingham could not be bound by any acts of defendant Goldschmidt.

■ Plaintiff's petition clearly alleged facts showing a joint adventure between Goldschmidt and Ingham in connection with the promotion of the TV showing and the sale of tickets. These allegations were admitted by defendant Ingham in the answer filed on his behalf. "A joint enterprise or joint adventure is in the nature of a partnership and is a 'limited,' 'special,' or 'quasi partnership.'" Hobart-Lee Tie Co.

v. Grodsky, et al., 329 Mo. 706, 46 S.W.2d 859. In view of the admissions in the answer it was not necessary to produce evidence to support the allegations of the petition, although such evidence was offered. Ingham not only agreed to participate in the venture with Goldschmidt, but actually did so. He, therefore, is bound by the acts of his associate in carrying out the enterprise. 48 C.J.S. Joint Adventure § 13, p. 865. We find no merit to the point urged.

It is next urged that the motion for a directed verdict should have been sustained as to defendant Goldschmidt for the reason there was no evidence to support the charge that the acts of defendant were deliberate, willful and malicious. It seems to be the theory of defendant Goldschmidt that these allegations converted the action into a suit for damages for false and fraudulent representations; and that plaintiff failed to prove the elements of such an action.

■ Clearly the cause of action pleaded was one to recover money wrongfully withheld from plaintiff and defendant Weir. Under Civil Rule 42.01, V.A.M.R., there is but one form of action to be known as a "Civil Action," and it does not devolve upon the pleader to state its nature. He must give a plain and concise statement of the facts constitutive of his cause of action, from which the court will determine its nature. We construe the action to be for money collected by defendants to which they were not entitled, and it makes no difference how it came into defendants' possession. Defendants were under an obligation to repay same, and this action was instituted for that purpose. The allegation that the acts of defendants "were deliberate, willful and malicious" was made to support the prayer for punitive damages and for no other purpose. Whether punitive damages may be recovered in such an action is not before us, and we make no ruling with respect thereto. There is no merit to the point urged.

Complaint is made of Instruction No. 3, given at the request of plaintiff. Said instruction is as follows:

"Your verdict must be for the plaintiff if you believe:

"First, that the defendants, Ray Goldschmidt and Robert Ingham:

"(a) retained moneys due the plaintiff based on altered, fictitious or incorrect expense items; or

"(b) issued complimentary tickets contrary to plaintiff's instructions, and

"Second, that as a result of defendants Ray Goldschmidt's and Robert Ingham's actions plaintiff sustained damage."

It is contended, as to defendant Ingham, that the instruction assumed facts not in evidence. It is urged there was no evidence that Ingham participated in the wrongful acts of Goldschmidt which is the basis of the suit.

What we have said heretofore in disposing of Point I of points relied on is applicable here. Defendant, Ingham, admittedly was engaged in a joint adventure with Mr. Goldschmidt in connection with the promotion of the TV showing and the sale of tickets. Under the law Ingham was bound by Goldschmidt's acts and is equally responsible for any damage caused by said acts.

It is next urged that the instruction is erroneous because it failed to require a finding that the acts complained of were deliberate and failed to hypothesize the other elements of an action for fraud and deceit. As heretofore stated the action was not one for damages for false and fraudulent representation, but one money collected by defendants and retained to which they were not entitled. The instruction was not erroneous in the respects claimed.

■ In the "argument" portion of defendants' brief, other complaints are made with respect to said instruction but these complaints are not raised under "points re-

lied on." Therefore, we will not rule on said complaints.

■ Defendants' final assignment of error is that the Court erred in refusing to give and read to the jury Instruction A which is as follows:

"Your verdict must be for defendants Goldschmidt and Ingham if you believe:

"(1) Defendants Goldschmidt and Ingham made an honest accounting to plaintiff or to defendant Weir, and

"(2) Defendants Goldschmidt and Ingham issued the complimentary tickets mentioned in the evidence with permission of plaintiff or defendant Weir."

It is first argued that the evidence shows that defendant Goldschmidt *attempted* to make an honest accounting and for that reason defendants should not be held liable for overcharges disclosed by the evidence; and that the instruction properly submitted this defense. We do not believe such a defense is valid. A good faith attempt to make an honest accounting should not relieve defendants from the duty to repay money collected to which they are not entitled. The evidence clearly shows that the so-called accounting was inaccurate, and that money was collected under it which defendants should repay. Defendants offered no evidence that it was an accurate accounting. In fact, defendants own evidence showed overcharges. This action was brought to compel such repayment. We rule against defendants on the point urged.

■ The matter submitted in the second part of the instruction was fully presented by Instruction No. 4, given at defendants' request. Said instruction was a converse instruction and reads as follows:

"Your verdict must be for the defendants (in plaintiff's claim for damages) unless you believe that defendants, Ray Goldschmidt and Robert Ingham retained moneys due the plaintiff based on altered, fictitious or incorrect expense items, or

**52**

issued complimentary tickets contrary to plaintiff's instructions."

Having gotten a true converse by Instruction No. 4, defendants were not entitled to submit the same defense by an affirmative converse. MAI No. 29.01.

Finding no error in the record, the judgment is affirmed.

RUDDY and WOLFE, JJ., concur.