In the Matter of the ESTATE of Doctor
Harold PASSMAN, Deceased.

The CITY NATIONAL BANK AND
TRUST COMPANY, Executor,
Appellant,

v.

Natalie GRAVES, Respondent.

No. 59275.

Supreme Court of Missouri,
En Banc.

May 5, 1976.

Rehearing Denied June 14, 1976.

Jerome T. Wolf and Edward A. Setzler, Spencer, Fane, Britt & Browne, Kansas City, for appellant.

James W. Jeans, Kansas City, Lantz Welch, Kansas City, for respondent.

PER CURIAM.

■ This cause was transferred from the Court of Appeals, Kansas City District, to reconsider whether or not the standard burden of proof instruction, MAI 3.01, would adequately instruct a jury as to the burden placed on a party claiming an inter vivos gift after the death of the alleged donor. After reargument in this court, we agree with the Court of Appeals that it would not; and, that the admonition found in the Committee's Comment following MAI 3.01 that "This instruction is not to be used in those rare cases where the proof must be 'clear, cogent and convincing'" is consistent with the law as established in this state and must be followed. The opinion of Turnage, J., provides an accurate review of the relevant law as declared by this court and follows the dictates thereof by directing that: "On retrial, MAI 3.01 should be modified to include at the appropriate place a statement that the evidence must be clear, [cogent] and convincing proof to convince the jury *beyond a reasonable doubt*." (Emphasis added.) As noted therein, the italicized words—"beyond a reasonable doubt" —have been challenged as inappropriate to instructions in a civil case. This court is at liberty to recognize such criticism and correct what perhaps has been an erroneous approach to the problem. From this time forward, the phrase should not be used in instructions in civil cases. As modified, the opinion of Turnage, J., is adopted as the opinion of this court; which, without benefit of quotation marks, is as follows:

This case originated in the Probate Court of Jackson County with the filing by City National Bank & Trust Company (Bank), the executor of the estate of Dr. Harold Passman, of an affidavit for the discovery of assets against Natalie Graves (Graves).

Pursuant to the statutory procedure, the Bank filed interrogatories and Graves filed answers. This resulted in defining the property in controversy to be $15,000 in Sheraton Hotel Bonds, $20,000 in Southeastern Oklahoma Development and Gas Authority Bonds, together with a sofa and air conditioner. By answer to one of the Bank's interrogatories, Graves claimed she had given $5,000 in Sheraton Hotel Bonds to Dr. Passman for the purpose of selling the same and reinvesting in other bonds, but she had not received the bonds or cash from this transaction and thereby the estate was indebted to her in the sum of $4,022, which was the proceeds of the $5,000 bond after sale expenses.

The Probate Court found the issues in favor of the Bank and Graves appealed. On trial de novo to a jury in the circuit court, the jury returned a verdict in favor of Graves finding she was the owner of the $15,000 Sheraton Bonds, the $20,000 Southeastern Oklahoma Bonds, the sofa, the air conditioner, and was entitled to the $4,022 proceeds of the sale of the $5,000 Sheraton Bond. The Bank has appealed from the judgment entered on this verdict.

The evidence showed Dr. Harold Passman was a physician practicing in Kansas City, Missouri, who had been married to his wife, Louisa, for over twenty-five years. He had been married previously and had children

by that marriage, but by his marriage to Louisa had two sons. In 1966 Graves became a patient of Dr. Passman and shortly thereafter was employed by him as a medical assistant. At about the same time Dr. Passman and Graves entered into a relationship which transcended the employer-employee status with the result that in October, 1967, Dr. Passman moved into Graves' house and lived there until his death in August, 1969.

In 1968 Dr. Passman rented a safety deposit box at the Wornall Bank in which he was listed as the owner with Graves as a deputy. About four months thereafter the ownership of this box was changed to show Graves as the owner and Dr. Passman as the deputy.

Graves testified in the Probate Court that Dr. Passman had given her the Sheraton Bonds in April or May, 1969. Betty Roth, an aunt of Graves, testified she was visiting Graves during the months of April and May of 1969 and observed that Dr. Passman was living there. She stated she confronted Dr. Passman and inquired as to what he was going to do for Graves and he stated he had given her $20,000 worth of bonds. In circuit court Graves testified the gift of the Sheraton Bonds must have been made on January 2, 1969, since that was the last recorded entry into the box prior to April or May. Graves testified Dr. Passman took the bonds from the safety deposit box at the time of the gift and stated he was giving them to her and she accepted them as a gift. She stated at that time she did not know the value of the Sheraton Bonds or the number of bonds actually given to her. Other evidence showed that on January 2, 1969, $5,000 of the Sheraton Bonds were in the custody of the Bank as a result of a pledge of such bonds by Dr. Passman as security for a loan. That loan was paid in March of 1969 and the $5,000 Sheraton Bonds were returned to Dr. Passman.

Graves testified that on another entry into the box in May, 1969, Dr. Passman again told her he was giving her the bonds and wanted her to have them. The bonds involved at this time were the Sheraton Hotel Bonds.

She further testified on July 1, 1969, she and Dr. Passman went to the box and clipped $750 in coupons from the bonds which she gave to Dr. Passman. In June, 1969, Dr. Passman purchased the $20,000 Southeastern Oklahoma Bonds and Graves testified these were delivered to him by his broker. She testified after the broker left the bonds, Dr. Passman told her he was giving these bonds to her and she stated she accepted them. These bonds were placed in the safety deposit box with the Sheraton Bonds. Both the Sheraton and Southeastern Oklahoma bonds were bearer bonds.

Both Graves and Arthur Stoup, Dr. Passman's attorney, testified that Graves and Dr. Passman visited Mr. Stoup just a week prior to the doctor's death. Dr. Passman told Mr. Stoup he wanted to change his will in order to cut out his wife so that he could leave everything to his two children. Mr. Stoup advised the doctor it was impossible to cut Louisa completely out of his will. Since Mr. Stoup was leaving on vacation, nothing was done concerning the will and the next week Dr. Passman died. The will in effect at the time of Dr. Passman's death left his property in trust for his wife Louisa, with the property ultimately passing to his two sons.

Shortly before his death, Dr. Passman gave an order to his broker to sell $5,000 of the Sheraton Bonds and to purchase tax exempt bonds. After Dr. Passman's death, the tax exempt bonds were sold by the broker and $4,022 remained from this sale after the expenses. This amount was given to the Bank as part of the assets of the estate of Dr. Passman.

Graves' testimony was corroborated to the extent of the $20,000 Sheraton Bonds by the deposition of her aunt, Betty Roth. The Bank produced Louisa Passman and her two sons and Dr. Passman's brother who all testified they had had numerous conversations with Dr. Passman and he never made any statement concerning any gifts to Graves. All of them were aware of Dr. Passman's relationship with Graves.

On this appeal the Bank complains first of the giving of MAI 3.01, the conventional burden of proof instruction. The Bank contends that since this case involved an inter vivos gift which was first claimed after the death of the donor, the court should have given an instruction to the effect that the proof of the gift must be clear, cogent and convincing which must exist beyond a reasonable doubt. The Bank relies upon a number of cases which have held the burden of proof and type of evidence to be as the Bank contends in this kind of case. Among these cases are *Morley v. Prendiville*, 316 Mo. 1094, 295 S.W. 563 (1927); *Cremer v. May*, 223 Mo.App. 57, 8 S.W.2d 110 (1928), and *In re Petersen's Estate*, 295 S.W.2d 144 (Mo.1956). Those cases indicate, as stated in *Petersen*, ". . . that where a gift is not asserted until after a donor's death, it is viewed with some suspicion, and the requirement of clear and convincing proof to establish it is particularly applicable." 295 S.W.2d 144, l. c. 150[8–10].

In *Morley* the court set out a number of instructions which were given to the jury in a case in which an inter vivos gift was first claimed after the death of the donor. The burden of proof instruction in that case told the jury, " '[t]he defendant must not only prove to your satisfaction and beyond a reasonable doubt and by evidence clearly unequivocal . . .' " 295 S.W. 567[2]. The court further stated at that same page, "[t]he instructions given show that the jury was fully directed as to the proof required to establish a gift and cautioned that, to justify a verdict for the defendant, they must be convinced beyond a reasonable doubt of the existence of the elements which make a valid gift."

*Morley* is the last case which has been cited or located in which the Supreme Court has passed upon an instruction to the jury in a case involving a gift first claimed after the donor's death.

In *Cremer* the court considered an instruction which told the jury "the burden is on the defendant to prove the alleged gift by *evidence which is clear and unequivocal and which convinces the jury of its truth-*

*fulness*; . . ." 8 S.W.2d 110, l. c. 115[6].

A number of cases state the evidence must convince the jury beyond a reasonable doubt. These include *Albrecht v. Slater*, 233 S.W. 8 (Mo.1921); *St. Louis Union Trust Company v. Busch*, 346 Mo. 1237, 145 S.W.2d 426 (1940) and *Gillespie v. Ringhausen's Estate*, 364 S.W.2d 633 (Mo.App.1963).

The reason for this rule is the suspicion with which the law views a gift first claimed after the donor's death. Some of the cases state the claimant in such a situation assumes a heavy burden to prove the existence of a gift.

Graves does not deny the above-cited cases hold as they do, but relies solely on *Baker v. Bickel*, 386 S.W.2d 105 (Mo.1964) in which the court stated at 111[8–9]: "[f]or proper burden of proof instruction in future jury cases, see MAI No. 3.01, June 1964 supplement. Our rule is that the burden of proof on fact issues to be decided by a jury does not change with the kind of case to be tried."

Graves contends the court in *Baker* abrogated any rule concerning burden of proof except the burden prescribed in MAI 3.01. The court in *Cremer* considered much the same type of argument when a statement was cited from *Brooks v. Roberts*, 281 Mo. 551, 220 S.W. 11 (Mo. banc 1920) stating: "[n]or does the term 'reasonable doubt' or similar expressions have any place in civil case instructions." In *Cremer* the court stated this did not change the ruling in *Morley* and followed the holding in *Morley* concerning the burden of proof in a case involving a gift first asserted after the donor's death. The court in *Cremer* likewise rejected the argument that the statement concerning the burden of proof in *Morley* was only *dictum*. The court further observed *Brooks* did not involve a gift case but was a quiet title action.

The general statement contained in *Baker* cannot be considered to change the type of evidence required or the burden of proof necessary to establish an inter vivos gift. This is especially true when the Supreme Court, subsequent to *Baker*, restated the

rule as follows: "[a]s a general rule one claiming an inter vivos gift has the burden of proving the same by clear and convincing evidence." *In re Estate of Wintermann,* 492 S.W.2d 763 (Mo.1973). Not only has the court in *Wintermann* acknowledged the rule in gift cases to be clear and convincing evidence, but the Committee's Comment following MAI 3.01 states: "[t]his instruction is not to be used in those rare cases where the proof must be 'clear, cogent and convincing.'" As stated in *Corbin v. Wennerberg,* 459 S.W.2d 505 (Mo.App.1970): "[i]n choosing appropriate instructions, therefore, 'it is essential that attorneys carefully consider the committee comments * * *'. *Peak v. W. T. Grant Company,* Mo., 409 S.W.2d 58, 60[1]. And while to disregard the guidance offered by the committee comments does not plainly result in presumptively prejudicial error, as when applicable Notes on Use are not followed (citations omitted), it tends to prejudicial error . . . ."

*Baker* involved a fraud case and no mention is made of inter vivos gift cases. As pointed out in *Baker* the usual preponderance of evidence test is applicable in a fraud case. In view of the restatement of the rule applicable to the gift cases as stated in *Wintermann,* it cannot be said the court in *Baker* abrogated the burden of proof or character of evidence historically required in the gift cases. There is no more reason to think the court in *Baker* was abrogating this rule than there was for the court in *Cremer* to think the rule had been abrogated by the statement in an earlier case concerning reasonable doubt appearing in civil instructions.

■ The last direct holding by the Supreme Court on an instruction in an inter vivos gift case is in *Morley.* There the court approved the burden of proof as being by evidence clearly unequivocal and beyond a reasonable doubt. Considering the firmly entrenched rule in this type of case, as fortified by the Committee Comment to MAI 3.01, it is inescapable the trial court erred in giving MAI 3.01 without modification.

On retrial, MAI 3.01 should be modified to include at the appropriate place a statement that the evidence must be by clear, cogent and convincing proof.

The Bank raises four additional points which may recur on another trial. The first of these is the propriety of the circuit court assuming jurisdiction of the claim which Graves had against the estate of Dr. Passman for the $4,022 proceeds of the sale of the tax exempt bond. The Bank by interrogatories filed in probate court inquired of Graves if she had ever made a loan to Dr. Passman. In response thereto Graves set out a loan and the terms thereof and added the following to that answer:

"In addition to the foregoing, Natalie Graves removed $5,000.00 of the Sheraton Corporation bonds from her safety box at the Wornall Bank so that Dr. Passman could sell the same for her and convert the proceeds to municipal bonds. These municipal bonds have not been returned to her, and therefore Dr. Harold Passman or the Estate of Dr. Harold Passman is indebted to Natalie Graves for the proceeds of sale of the said $5,000 of Sheraton bonds."

■ Both the probate and circuit courts, over the Bank's objection, held this properly presented the issue of whether or not the estate of Dr. Passman was indebted to Graves. The affidavit of discovery of assets originally filed by the Bank followed the procedure dictated by §§ 473.340–473.-350, RSMo 1969. The Bank claims the issue concerning the $4,022 was not properly raised by Graves because it was not filed pursuant to the requirements of § 473.357, RSMo 1969. Graves contends the issue was properly raised under the holding in *State ex rel. Lipic et al. v. Flynn,* 358 Mo. 429, 215 S.W.2d 446 (banc 1948) in which the court stated the issues in a discovery of assets proceeding are not confined to those tendered in the initial affidavit but are made by the more detailed written interrogatories and answers thereto. This is undoubtedly the rule, however, that case did not involve the question of broadening the issues to include a question of an asset held

by the estate belonging to another. The statutes dealing with discovery of assets are limited to discovery of assets claimed to belong to the estate but which are in the possession of another. Section 473.357 specifically deals with the claim made by another that assets belonging to that person are being held by the estate.

Graves contends that her answer should be construed as the petition required under § 473.357. This is not possible because her answer, even though verified, does not comply with the mandate of that section. For instance, that section requires the person filing the petition alleging the estate is holding personal property belonging to that person to allege how he acquired ownership thereof. Such section also provides for an answer to be filed by the estate and the issues raised by the petition and answer are those to be tried. Here Graves' answer did not contain any allegation as to how she acquired ownership of the money she alleged was due from the estate, nor was the estate provided an opportunity to file any sort of answer to raise any issue concerning this claim by Graves. Rather, the issue of the ownership of this sum was tried in the same manner as the other issues raised by the interrogatories and answers.

The statutes as they existed at the time this proceeding was begun set out completely the procedure for claims involving property held by another, but alleged to belong to the estate, and for claims involving property held by the estate, but alleged to belong to another. The issues made by the interrogatories and answers under the discovery of assets proceeding were required to be germane to the central issue of property held by another but alleged to belong to the estate. Such issues could not be extended to include property held by the estate but alleged to belong to another because of the completely separate statutory scheme for disposing of this class of cases. This problem has largely been obviated by the repeal of §§ 473.343 to 473.357. However, at the time this proceeding was begun, the old sections were in force.

By failing to follow the statutory dictates for the presentation of her claim of ownership of money held by the estate, the court did not have jurisdiction of this claim by Graves. On remand the claim of Graves to this $4,022 should not be considered by the court.

The Bank next urges the court erred in failing to sustain a motion for directed verdict with respect to $5,000 in Sheraton Bonds which the Bank claims were in the actual custody of the Bank at the time of the alleged gift by reason of a pledge as security for a loan. The Bank claims Graves stated the gift of this amount of bonds was made on January 2, 1969, when $5,000 of the Sheraton Bonds were actually in the custody of the Bank under a pledge, therefore, the bonds could not have been physically delivered to her, and one of the essential elements of a gift thereby failed.

On this point this court must view the evidence in the light most favorable to Graves. *Bishop v. Goldschmidt,* 436 S.W.2d 47 (Mo.App.1968). Viewed in this light, the jury could have found from Graves' testimony that the $5,000 in Sheraton Bonds were given to her on May 23, 1969, after such bonds had been returned to Dr. Passman by the Bank in March. This inference would be permitted by the testimony of Graves that interest coupons on such bonds were clipped on July 1, 1969, in the amount of $750. The testimony was that such bonds bore interest at the rate of 7½%, with the interest payable semi-annually. Since $750 is interest at 7½% on $20,000 for six months, the jury could properly find that on July 1, 1969, all $20,000 worth of bonds were in the safety deposit box. Since they were there on July 1, 1969, under the evidence that such bonds were returned to Dr. Passman in March of 1969 and that Dr. Passman and Graves visited the box on May 23, 1969, when Dr. Passman confirmed his gift, the jury could find that all of the bonds were in the box in May. For that reason, it was not error to refuse to direct a verdict as to the $5,000 in Sheraton Bonds.

The Bank next complains of the action of the court in admitting in evidence

a large piece of paper on which counsel for Graves had written the numerous dates involved in the case, together with a brief outline of evidence occurring on such dates. This piece of paper was attached to the chalkboard and used by counsel in his opening statement. It was not used again until it was likewise attached to the chalkboard and used by counsel in his closing argument. The paper was marked as an exhibit and was admitted by the court into evidence just prior to the closing arguments. While it is proper to use visual aids in explaining the case to a jury, *Boese v. Love,* 300 S.W.2d 453 (Mo.1957), it is axiomatic that evidence to be admissible must have logical relevance and probative value. *Cardello v. Bauer,* 433 S.W.2d 81 (Mo.App. 1968).

The Bank concedes the dates and occurrences listed on the paper were admitted in evidence through the testimony of Graves, but contends it contains conclusions of counsel in improper form to be admitted in evidence. That being the case, counsel was not referring to any matter not in evidence and was simply using the paper as a visual aid to help clarify the many dates and occurrences about which the jury had heard testimony. However, as a purely technical matter, the court should not have actually received such piece of paper in evidence since the paper itself was not evidence, only a partial recapitulation of the evidence in the language of counsel. On retrial counsel should be permitted to make use of the paper as a visual aid in opening statement and closing argument as he was in the original trial. The paper may properly be marked as an exhibit for identification, but should not be actually received in evidence.

The Bank complains finally of the form of verdict. The court gave the following form in the event the jury found in favor of Graves:

> " 'We, the jury, find the issues in favor of the citee, Natalie Graves with respect to the following items of property, and we declare the ownership of the following items of property to be hers:

> (here insert identity of such property).' "

The form, if the jury found in favor of the Bank, was given as follows:

> " 'If all of you agree upon a verdict in favor of affiant City National Bank and Trust Company, Executor of the estate of Harold Passman, deceased, it may be in the following form:

> " 'We, the jury, find the issues in favor of affiant.' "

The Bank argues these forms were prejudicial to it because it allowed the jury to find for Graves as to one or more items of property, but seemed to require the jury to find in favor of the Bank as to all items in order to find for the Bank. An extended discussion of the merits of this argument is not required, but it may simply be observed that on retrial the court should consider the Bank's argument in this regard. The court could very easily make the form of verdict in favor of the Bank to be the same as the form of verdict in favor of Graves and thus fully meet the Bank's complaint.

The judgment is reversed and the cause is remanded for a new trial with directions that the claim of Graves as to the ownership of the $4,022 shall be dismissed.

MORGAN, HOLMAN, HENLEY and DONNELLY, JJ., concur.

SEILER, C. J., concurs in result in separate concurring opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

FINCH, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

SEILER, Chief Justice (concurring in result).

The law is well established that in order to have a gift there must be delivery of possession along with an intent to give. If this occurs, there is a gift. I see no justification for saying that it takes more to establish a gift at one time than it does at another. If there has been delivery and the required intent, a gift has taken place, no matter whether it comes to light before or

after the death of the donor. It is not necessarily so that every claim of a gift not disclosed until after death of the donor is likely false.

In my opinion the "clear, cogent and convincing" evidence requirement in an instruction amounts to a comment on the evidence by the court. It is equivalent to a declaration that in every such case the claim of the donee should be viewed with skepticism and placed under a handicap.[1] If it is not a comment on the evidence, it certainly is a cautionary instruction, something which MAI is at pains to avoid in most instances. Mo.Approved Jury Instructions, 2d Ed. xxvi.

If there are circumstances present which would logically raise doubt as to veracity of the testimony of the donee, the jury can be expected to take this into consideration in arriving at their verdict under the standard MAI 3.01 and it can be covered adequately by the lawyers in jury argument. Under 3.01 the jury is at liberty in determining whether there was delivery with the required intent to consider the evidence and the reasonable inferences derived therefrom. This would include all the inferences of self-serving which might or might not be expected of a donee in the situation of the respondent. The jury was fully aware of the relationship which existed among and between Dr. Passman, his wife, and Natalie Graves. It did not require a "clear, cogent and convincing" type of instruction to make the jury realize the possibilities.

Furthermore, the estate of the alleged donor already has the protection afforded by the dead man's act, Sec. 491.010, RSMo 1969, with respect to foreclosing entirely the testimony of the donee and does not need, additionally, a "Little Dead Man's Statute", which is what appellant's brief calls the special burden of proof rule it is

seeking to uphold. In a proceeding to discover assets, as here instituted by the executor, the donee is not admitted to testify in his own favor, even though the petitioner files interrogatories and the defendant files answers thereto. See *Estate of Rogers v. Courier*, 429 S.W.2d 258, 262–63 (Mo.1968), where the propounding of 43 interrogatories to defendant was held not to waive defendant's incompetency as a witness. Of course, the incompetency can be waived, as apparently was done in the case before us, by the executor, by subjecting the defendant to oral examination, *In re Trautmann's Estate*, 300 Mo. 314, 254 S.W. 286 (1923), but this is a matter of choice by the estate.

Similarly, if the donee should seek by an independent action to establish the gift in his favor, again he would be barred by the statute from testifying. *Kling v. McCabe*, 36 F.2d 337 (8th Cir. 1929); *Dunn v. German-American Bank*, 109 Mo. 90, 18 S.W. 1139 (1892); *Manley v. Ryan*, 235 Mo.App. 45, 126 S.W.2d 909 (1939).

After much effort, we have evolved MAI 3.01. It is simple and direct. It is directed toward the idea that the jury must decide whether to believe or not believe the proposition submitted, considering the evidence and the reasonable inferences therefrom. We no longer try to define the meaning of "preponderance or greater weight of the credible evidence" or require proof "to the satisfaction of the jury", etc.[2] Why not leave it at that, without requiring the jury also to determine whether the evidence is "clear, cogent and convincing"? What do these terms mean to the average juror and what purpose do they serve other than to confuse, rather than aid, and baffle, rather than facilitate, the determination of the proposition to be decided? It should not be required, first, that a proposition be established clearly, second, that it be established cogently, and, third, that it be established

---

1. In the criminal law field, in the case of flight, we refrain from any instruction commenting on or directing the jury's attention to flight or explanation for what appears to be flight, but we permit counsel to argue the evidence of flight or its explanation to the jury. See MAI–CR, Instructions Never Given, 5.40 Flight.

2. In the trial of a criminal case, we prohibit attempts to instruct as to the meaning of "reasonable doubt" or "beyond a reasonable doubt." MAI–CR, Instructions Required—Requested or Not, 2.20 Burden of Proof and Related Matters.

convincingly. If the jury believes the proposition submitted, that should be sufficient. As said in Wigmore on Evidence (3rd Ed.), Vol. IX, p. 325:

"The truth is that no one has invented or discovered a mode of measurement for the intensity of human belief. Hence there can yet be no successful method of communicating intelligently to a jury a sound method of self-analysis for one's belief. If this truth be appreciated, Courts will cease to treat any particular form of words as necessary or decisive in the law for that purpose; for the Law cannot expect to do what Logic and Psychology have not yet done."

I agree that in light of the Committee Comment referred to in the principal opinion it would be unfair to apply the change to the present appeal and so I concur in the result reached in the principal opinion, but from this date forward I would consider *Morley v. Prendiville,* 316 Mo. 1094, 295 S.W. 563 (1927) and *In re Wintermann,* 492 S.W.2d 763 (Mo.1973) overruled on the point under discussion and would no longer instruct that an inter vivos gift must in some circumstances be proved by "clear, cogent, and convincing proof". Instead, I would adhere to the view expressed in *Baker v. Bickel,* 386 S.W.2d 105, 111 (Mo.1964) that MAI 3.01 is sufficient and that the rule is " . . . that the burden of proof on fact issues to be decided by a jury does not change with the kind of case to be tried." In addition, I would require that the Committee Comment following MAI 3.01 stating that "This instruction is not to be used in those rare cases where the proof must be 'clear, cogent and convincing' " no longer be heeded and that the statement be disregarded henceforth.

BARDGETT, Judge (dissenting).

I concur in the concurring opinion of SEILER, C. J., in all respects except the conclusion that the cause should be reversed and remanded because, under that concurring opinion, on remand MAI 3.01 would be used just as it was in the trial which is the subject of this appeal. I would affirm the judgment.